Charles O. TUCKER

v.

The UNITED STATES.

No. 206–78.

United States Court of Claims.

June 18, 1980.

William E. Tucker, Denver, Colo., attorney of record, for plaintiff; Tucker & Brown, Denver, Colo., of counsel.

William D. White, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant; Jean Schepers, Washington, D. C., R. Bruce Carter, Norman, Okl., and Lydia B. Parnes, Washington, D. C., of counsel.

Before KASHIWA, KUNZIG and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

In this action plaintiff, by seeking reinstatement and back pay, challenges the correctness of his removal as an employee of the Federal Aviation Administration (FAA).[1] The parties are presently before this court on cross motions for summary judgment. Defendant asks us to hold that plaintiff's removal was proper. There being no genuine issue as to any material fact, for the reasons set out below we grant defendant's motion. Doing so being dispositive of this action, we also dismiss plaintiff's petition in its entirety.

In 1963 plaintiff began working as an air traffic controller at the Air Route Traffic Control Center in Indianapolis, Indiana. In June 1976 he was selected for a tour of duty as an instructor at the FAA Academy in Oklahoma City, Oklahoma. At the time of his transfer to the FAA Academy, plaintiff was married and his spouse's three children from her former marriage were living with them. In February 1977 plaintiff submitted his first travel voucher in connection with his move to Oklahoma City. This

voucher claimed reimbursement for travel between Indianapolis and Oklahoma City and a subsistence allowance for temporary quarters expense for plaintiff as well as his spouse and children. The voucher indicated that plaintiff's wife and children left Indianapolis on July 12, 1976, and arrived in Oklahoma City the following day. This voucher was returned to plaintiff because it included travel expense for a dependent not authorized on his travel orders as well as a duplication of days for which plaintiff requested reimbursement.

Plaintiff's move to Oklahoma City had created marital problems between himself and his wife, and she filed for divorce. On February 14, 1977, plaintiff's divorce became final. On March 7, 1977, plaintiff resubmitted his travel voucher, again claiming reimbursement for his now former wife and children for en route travel on July 12 and 13, 1976, and temporary quarters expense. It was administratively determined that the meal costs associated with the temporary quarters were excessive, and the voucher was returned to plaintiff with instructions that if he could justify the expense, it would probably be approved. He resubmitted his travel voucher on May 9, 1977, again claiming travel and temporary quarters expenses for his former wife and children. Before the May voucher could be processed, the FAA Depot Transportation Branch discovered plaintiff had an outstanding Government bill of lading for movement of his household goods to Oklahoma City. When plaintiff was asked about the situation, he stated that his family had not moved from Indianapolis to Oklahoma City. The Transportation Branch then notified the FAA Accounting Office.

The Accounting Office requested that the FAA Academy Investigations and Security Division conduct an investigation. The investigation found plaintiff's dependents had not relocated with him in Oklahoma City and plaintiff had not incurred the travel

---

1. Plaintiff also seeks judgment for attorney fees. He is, however, not entitled to such an award. 28 U.S.C. § 2412 (1976). We therefore do not further discuss this point.

and temporary quarters expenses claimed for them. The investigation was coordinated with the FBI. On July 5, 1977, plaintiff was charged with violation of 18 U.S.C. § 1003 (1976) in that he knowingly and fraudulently endeavored to have a debt from the United States paid by virtue of a false instrument. The charge arose out of plaintiff's claiming reimbursement on his March 7 and May 9 vouchers for travel and temporary quarters for his wife and three children. On August 11, 1977, plaintiff entered a plea of *nolo contendere* to this criminal charge. However, this plea was erroneously recorded as a plea of guilty.

On August 3, 1977, plaintiff was sent notice of his proposed removal from the FAA for falsification of his March 7, 1977, and May 9, 1977, travel vouchers. The February 1977 voucher was not relied on by the FAA in seeking plaintiff's removal. The four specifications underlying this charge of falsification were:

*Specification No. 1.* On Standard Form 1012, Travel Voucher, which you certified correct by your signature of March 7, 1977, you claimed reimbursement for 2 days enroute per diem in the amount of $198 for four dependents over age 12 from Indianapolis, Indiana, to Oklahoma City, Oklahoma, on July 12 and July 13, 1976. Your dependents did not travel from Indianapolis, Indiana, to Oklahoma City, Oklahoma, on July 12 and July 13, 1976.

*Specification No. 2.* On Standard Form 1012, Travel Voucher, which you certified correct by your signature of March 7, 1977, you claimed reimbursement of $120.75 for the travel of your wife and three dependents in a second privately owned vehicle (POV) for 805 miles from Indianapolis, Indiana, to Oklahoma City, Oklahoma, on July 12 and July 13, 1976. You also claimed reimbursement for $3.30 expended for tolls on the Turner and Will Rogers Turnpikes during the travel by your wife and three

dependents in the second POV. Your wife and three dependents did not travel by POV from Indianapolis, Indiana to Oklahoma City, Oklahoma, on July 12 and July 13, 1976.

*Specification No. 3.* You claimed reimbursement of $1,834.30 for subsistence for you and four dependents on Standard Form 1012, Travel Voucher, which you certified correct by your signature of March 7, 1977. You were not entitled to reimbursement of subsistence for four dependents in the amount of $1,298 reflected on Form DOT F 1500.5 since the dependents never occupied temporary quarters.

*Specification No. 4.* You claimed reimbursement of $2,054.35 for subsistence for you and five dependents on Standard Form 1012, Travel Voucher, (Reclaim) which you certified correct by your signature of May 9, 1977. You were not entitled to reimbursement of subsistence for five dependents in the amount of $1,622.50 since they never occupied temporary quarters.

On August 26, 1977, plaintiff responded to this notice by making an oral presentation to Mr. Benjamin Demps, an official of the FAA. Acting on behalf of the FAA, Demps issued his decision letter on September 12, 1977, removing plaintiff for the efficiency of the FAA effective September 16, 1977. Plaintiff then appealed this decision to the Federal Employee Appeals Authority (Appeals Authority) of the Civil Service Commission.[2]

The Appeals Authority held a hearing on January 10, 1978. Plaintiff admitted at that time that he had signed the March 7 and May 9 vouchers. He also admitted that with the exception of his then wife who made a two-day house hunting trip to Oklahoma City in July 1976, neither she nor the three children claimed on the March and May vouchers did in fact travel to and reside temporarily in the Oklahoma City

---

**2.** Effective January 1, 1979, the Civil Service Commission was reorganized into the Merit Systems Protection Board and the Office of Personnel Management. Since all actions com-

plained of in the petition occurred prior to January 1, 1979, the reviewing agency will be referred to throughout as the Civil Service Commission.

area. By way of explanation, plaintiff asserted he innocently but erroneously claimed reimbursement for his spouse and children. Per plaintiff, prior to July 1976, in anticipation of his wife and children traveling to Oklahoma City around July 12, 1976, he penciled in a form detailing what their travel expenses would be. Plaintiff then supposedly placed this penciled-in form with the forms detailing his own actual travel expenses. From the time plaintiff relocated in Oklahoma City, the Academy travel office placed constant pressure on plaintiff to get his travel voucher filled out. During this time, plaintiff was also forced to work 10 to 12 hours a day as an instructor, write his own textbook, as well as attempt to reconcile his dissolving marriage. Plaintiff insists that in response to the FAA's insistence to submit his voucher, he inadvertently gave all of these forms to an FAA secretary. However, due to the work and marital pressures, plaintiff simply did not check the material turned over to the secretary and therefore did not realize the form relating to his wife and children was one of the items given to her. Had plaintiff realized the error, he never would have turned over this form. The secretary then used the information on the forms she received to fill out all three of plaintiff's vouchers. In this way, the anticipated travel expense for the wife and children was erroneously included on the vouchers. Plaintiff also asserted that he signed the March and May vouchers in blank before this secretary filled them out and that he never bothered to check the completed vouchers. This, in his view, explains his failure to detect the travel expense error. With respect to the claimed reimbursement for subsistence for temporary quarters expense, plaintiff admitted he intentionally sought recovery for this item but did so because he was under the impression that this item was reimbursable even if his wife and children did not relocate with him.

Among other evidence against plaintiff, the FAA introduced the erroneous guilty plea. The FAA claimed it was using this plea only as evidence of plaintiff's having the intent to fraudulently falsify the March and May vouchers. After the hearing, but before the Appeals Authority entered its decision, plaintiff submitted a *nunc pro tunc* order of the federal court which had accepted his plea of *nolo contendere*. This order on its face clearly indicated that plaintiff had in fact entered a plea of *nolo contendere* and that the plea of guilty was entered due to clerical error.

On March 7, 1978, the Appeals Authority entered a decision in which it found the four specifications underlying the charge of falsification to be supported by the preponderance of the evidence. It also concluded that plaintiff's removal would promote the efficiency of the FAA. The Appeals Authority specifically chose to disbelieve plaintiff's explanation that the reimbursement claims were the result of innocent error, expressing the view that it was convinced "the appellant was fully aware of [the vouchers'] content at the time of their submission, and that he knew that the expenses claimed therein had not been incurred, and that therefore his claim for reimbursement was false." Additionally, it found the penalty of removal was not disproportionate to the offense charged, the penalty did not amount to an abuse of discretion, and there existed a rational connection between the falsification of the vouchers and the decision to remove plaintiff for the efficiency of the FAA. It therefore affirmed the FAA's removal of plaintiff. Plaintiff then filed suit in this court. Plaintiff articulates a number of reasons for not attaching finality to the decision of the Appeals Authority. We address them in turn.

Plaintiff's initial objection is based upon the type of charge brought against him. Plaintiff contends he could be removed from employment with the FAA only if it was established he intentionally and with the purpose to defraud the Government falsified the March and May vouchers. Plaintiff insists the charge brought against him by the FAA and sustained by the Appeals Authority was not one of such intentional falsification. Plaintiff is incorrect. The charge brought against him was falsifica-

tion of travel vouchers. Implicit in such charge was the allegation that plaintiff intentionally and with the purpose to defraud the Government falsified the two vouchers in question. In addition, upon examination of the administrative record, we feel both the FAA and the Appeals Authority treated the charge against plaintiff as an allegation of intentional falsification for the purpose of defrauding the Government. The charge brought against plaintiff therefore would, if established, justify his removal.

■ Plaintiff next insists that based upon the entire record before the Appeals Authority, there was not substantial evidence supporting a finding of such intentional falsification. We, however, feel there was substantial evidence that plaintiff intentionally and with the purpose to defraud the Government falsified these two vouchers. The March and May vouchers were, respectively, the second and third vouchers plaintiff had submitted in an attempt to claim reimbursement. The first voucher was rejected due to an error with regard to travel expense for a dependent. The second voucher was rejected due to excessive temporary quarters expense being claimed for his wife and children. This should have alerted plaintiff to the existence of possible errors with respect to the travel and temporary quarters expense claimed for his wife and children. Plaintiff nevertheless went ahead and submitted his third voucher, again seeking the unwarranted travel and temporary quarters expense. The large amounts he sought to recover for these dependents should also have given plaintiff reason to check the accuracy of the expense items on his vouchers and his entitlement to them. Additionally, the March and May vouchers were both filled out after plaintiff's divorce became final, the May voucher at least 2½ months after the divorce. At the time these vouchers were submitted, there therefore clearly was no reasonable expectation that his wife and children would locate in Oklahoma City. It is true plaintiff appeared as a witness before the Appeals Authority and attempted to explain the errors as being honest and unintentional mistakes.

However, the hearing officer had the opportunity to observe plaintiff's demeanor and make a determination of his credibility. Based upon his observation, the hearing officer specifically chose to disbelieve plaintiff's explanation. In light of the above-indicated circumstantial evidence of plaintiff's intent, coupled with the rejection of plaintiff's explanation, the hearing officer could have reasonably concluded plaintiff possessed the intent to defraud. In holding this to be so, it is well to remember "[i]ntent, being a state of mind, can seldom be proved directly. Circumstantial evidence is generally utilized * * * to establish intent." *Scanland v. United States Army Test and Evaluation Command*, 389 F.Supp. 65, 75 (D.Md.1975). In addition, plaintiff having admitted that with the exception of a house-hunting trip made by his then spouse his wife and children never came to Oklahoma, there was clearly substantial evidence establishing that plaintiff in fact committed the acts enumerated in the four specifications. In view of the improper entries in the vouchers being established by substantial evidence and it being reasonable for the hearing officer to conclude these entries were intentionally made to defraud, we feel there was substantial evidence plaintiff intentionally and with the purpose to defraud the Government improperly claimed reimbursement for travel and subsistence for his former spouse and children. Clearly, there was more than a scintilla of evidence to this effect.

■ Plaintiff next contends the FAA did not establish that plaintiff's removal for the complained of conduct would promote the efficiency of the FAA. The recent case of *Young v. Hampton*, 568 F.2d 1253 (7th Cir. 1977) (written by Kunzig, J., sitting by designation), articulates what we feel is the proper test to use in determining whether this connection exists. The court there indicated that the employer agency must demonstrate some rational basis for its conclusion that discharge will promote the efficiency of that agency. If this rational basis exists, then for purposes of judicial review the discharge does in fact promote the effi-

ciency of the agency. On the facts of this case, we feel this necessary rational basis has been established. As an initial matter, the fact that honesty and fair dealing are imperative between a federal employee and the Government is implicit and needs no further elaboration. In addition, plaintiff's position imposed an even stronger requirement for integrity. At the time of removal, plaintiff was an instructor at the FAA Academy, a position of leadership and responsibility. This position also thrust plaintiff into the posture of being a role model to his students. Plaintiff's intentional falsification of these vouchers for the purpose of defrauding the Government could reasonably have indicated to the FAA that plaintiff was not honest and could not be trusted by the Government. In addition, in light of this hostile attitude toward his employer, the FAA could quite legitimately be reluctant to retain plaintiff in a position of leadership and responsibility. It is also reasonable for it to not want this sort of individual as a role model. For these reasons, we feel there exists a rational basis for concluding that plaintiff's discharge, on account of his intentional falsification, will promote the efficiency of the FAA.[3]

■ Plaintiff next argues that the penalty of dismissal is so disproportionate to the complained of conduct as to be arbitrary, capricious, and an abuse of discretion. In support, plaintiff relies on *Power v. United States*, 209 Ct.Cl. 126, 531 F.2d 505 (1976), and *Boyce v. United States*, 211 Ct.Cl. 57, 543 F.2d 1290 (1976). Plaintiff's reliance is misplaced. As we said in *Verrault v. United States*, Ct.Cl., No. 462–76 (order of March 3, 1978), a civilian pay case:

> Those cases [*Boyce* and *Power*], however, were not intended to overrule or modify the long-held position of this court, that within a wide range of discretion, and absent manifest abuse of discretion, choice of penalty in adverse action cases was for the employing agency and the Civil Service Commission, not the court.

The appropriate standard is thus whether removal is so disproportionate to the offense as to constitute a "manifest abuse of discretion." Only if it is, is removal arbitrary, capricious, and an abuse of discretion. We do not feel removal of plaintiff was so disproportionate. Plaintiff, by intentionally falsifying these two vouchers, sought to recover in excess of $1,900 in unwarranted reimbursement from the Government. The amount of money sought to be wrongly obtained is by no means *de minimis*. Rather, it is sufficiently large for us to conclude that removal was not a manifest abuse of discretion, but falls within the wide range of discretion we accord to the employing agency and the Civil Service Commission. *See Rifkin v. United States*, 209 Ct.Cl. 566 (1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977).

■ Plaintiff's final objections center around the Appeals Authority's admission of the erroneous guilty plea. Plaintiff feels the Appeals Authority's consideration of this plea negates there being substantial evidence supporting a finding of intent and also amounts to harmful error. We cannot agree. While is is true the Appeals Authority did admit the erroneous plea of guilty, it is also true that this error was corrected *prior* to the time the Appeals Authority entered its decision. As already indicated, plaintiff submitted a *nun pro tunc* order of the court which accepted plaintiff's plea in the criminal case. This order clearly indicated that plaintiff had in fact entered a plea of *nolo contendere* and had never in fact pleaded guilty and that the plea of guilty was entered solely due to clerical error. At the time the Appeals Authority rendered its decision, it therefore knew the correct status of plaintiff's plea to the criminal charge. In view of this, it is fair to assume the guilty plea was not relied upon in rendering its decision. Nor has plaintiff brought anything to our attention tending to establish the Appeals Authority's reliance on the guilty plea. Since the guilty plea was not relied upon, its erroneous ad-

---

**3.** Since plaintiff actually submitted a total of *three* falsified vouchers, including travel claims for dependents who never traveled, the nexus clearly speaks for itself.

mission did not affect the integrity of the decision reached.

Plaintiff additionally contends the admission of the plea of *nolo contendere* also amounted to harmful error. On the unique facts of this case, introduction of this plea through its being disclosed in the *nunc pro tunc* order was not harmful error. The *nolo contendere* plea was introduced by plaintiff for a very limited purpose. It was used not to establish intent but, rather, only to correct the error caused by admission of the guilty plea. For this reason, its introduction was not harmful error. Had the plea been introduced by the FAA for the purpose of establishing plaintiff's intent, its consideration by the Appeals Authority might have been harmful error. This, however, is an issue which we here need not reach.

### CONCLUSION

Plaintiff's objections all have no merit and we on our own have found nothing which makes the Appeals Authority's decision improper. Instead, we find its decision is supported by substantial evidence, is neither arbitrary or capricious nor an abuse of discretion, and is not infected with harmful error. We therefore attach finality to its decision. *E. g., Shapley v. United States*, 214 Ct.Cl. 783, 786 (1977). Hence, plaintiff's removal was proper, entitling him to neither reinstatement nor back pay. This being dispositive of the issues in plaintiff's petition, we grant defendant's motion for summary judgment and dismiss plaintiff's petition in its entirety.