John Fred CASTELLA, Plaintiff,

v.

John Edward LONG, Personally and in his official capacity as Commander, Harold D. Lynch, Personally and in his official capacity as Senior Management Official, Army and Air Force Exchange Service, the United States Dept. of Army and the United States of America, Defendants.

Civ. A. No. 3–87–1141–H.

United States District Court,
N.D. Texas,
Dallas Division.

April 29, 1988.

Joshua Turin, Cazorla Bates & Turin, Dallas, Tex., for plaintiff.

Marvin Collins, U.S. Atty., Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., Captain Richard O. Hatch, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are Defendants' Partial Motion to Dismiss the Complaint, filed September 15, 1987; Plaintiff's Response, filed December 3, 1987; Defendants' Reply, filed January 15, 1988; Individual Defendants' Separate Motion to Dismiss, or alternatively, for Summary Judgment, filed September 15, 1987; Plaintiff's Response, filed

December 7, 1987; Defendants' Reply, filed January 13, 1988; Individual Defendants' Statement of Undisputed Facts and Issues of Law, filed September 15, 1987; Plaintiff's Response to Individual Defendants' Statement of Facts and Law, filed November 5, 1987; Plaintiff's Cross–Motion for Summary Judgment as to Count Six, filed December 3, 1987; Defendants' Response, filed January 22, 1988; Plaintiff's Reply, filed February 1, 1988; Plaintiff's Statement of Undisputed Facts and Issues of Law, filed December 3, 1987; Defendants' Response to Plaintiff's Statement of Facts and Law, filed January 22, 1988; Defendants' Motion for Summary Judgment as to Count Seven, filed March 4, 1988; Plaintiff's Response, filed March 25, 1988; Defendants' List of Undisputed Facts and Issues of Law, filed March 4, 1988; Plaintiff's Cross–Motion for Summary Judgment as to Count Seven, filed March 4, 1988; Defendants' Response, filed March 25, 1988; Plaintiff's Reply, filed April 1, 1988; Plaintiff's Statement of Undisputed Facts and Issues of Law, filed March 4, 1988; Defendants' Response to Plaintiff's Statement of Facts and Law, ·filed March 25, 1988; and last, but certainly not least, 17 Volumes of the Administrative Record for the Administrative Proceedings pertinent to this case, filed September 15, 1987.

In their various Motions, Defendants are seeking Dismissal for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Dismissal for failure to state a claim can be granted only when Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Both parties have also filed numerous motions for summary judgment. Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56.

## FACTS

### A. *Background Facts.*

On July 25, 1985, Plaintiff, his wife, and three minor children began a permanent change of station (PCS) move from Fort Devens, Massachusetts to AAFES Headquarters in Dallas, Texas. Amended Complaint, ¶ 11. Documents submitted by Plaintiff to AAFES reflect that he and his family commenced travel on August 7, 1985, arriving in Dallas on August 22, 1985, after making several authorized intermediate stops. Administrative Record ("Ad. Rec.") Vol. XIV, Tab 5. Under AAFES regulations, Plaintiff's family was authorized a subsistence allowance for lodging, food, and laundry expenses on the PCS move for the period they were occupying temporary quarters. *Id.* at Tabs 3 and 4. The temporary allowance was terminated on November 12, 1985, the date Plaintiff had his household goods delivered to his permanent quarters. Ad.Rec. Vol. XV, Tab 18 at 3–4.

On August 27, 1985, Plaintiff brought a draft subsistence voucher to Ms. Mulder, an accounting clerk in AAFES Comptroller Division. Ad.Rec. Vol. I at 38–42, 60, 61. Ms. Mulder told Plaintiff to attach all lodging and dry-cleaning receipts when he submitted the finalized voucher. She also advised Plaintiff to save his meal receipts since they could be requested. *Id.* at 40. Plaintiff informed Ms. Mulder that he had not saved his meal receipts because no one told him to do so. *Id.* at 41–42.

The next day, Plaintiff returned and submitted his initial subsistence voucher covering the period from July 25, 1985 to August 27, 1985 (Ad.Rec. Vol. XIV, Tab 5). Ad. Rec. Vol. I at 60. Sometime after September 17, 1985, Plaintiff submitted a second voucher (Ad.Rec. Vol. XIV, Tab 6). Ad. Rec. Vol. I at 43–44. Ms. Mulder examined the two vouchers and, based on her experience, believed that the amounts claimed for meals were excessive. *Id.* at 43–44, 67, 71, 76. She consulted with her supervisor, Mr. Petrou, received approval to request meal receipts from Plaintiff, and sent Plaintiff a written request for meal receipts to support his claims (Ad.Rec. Vol. XIV, Tab 23). Ad.Rec. Vol. I at 61–62; Vol. IV at 791.

At a later date, Plaintiff brought a memo (Ad.Rec. Vol. XIV, Tab 24) and copies of

some meal receipts (Ad.Rec. Vol. XIV, Tabs 17 and 18) to Mr. Petrou. Ad.Rec. Vol. IV at 791–95. Because the handwriting on the receipts appeared to be similar to that on Plaintiff's voucher, Mr. Petrou asked Plaintiff if he had written the receipts. Ad.Rec. Vol. IV at 799. Plaintiff acknowledged that he had written in the amounts on some of the receipts. *Id.* Mr. Petrou indicated to Plaintiff that this was permissible as long as the amount filled in was the amount Plaintiff actually spent. *Id.* Plaintiff stated that he filled in the amounts to the best of his recollection. *Id.* at 803. Mr. Petrou then had Ms. Mulder compare the receipts submitted to the subsistence vouchers. *Id.* at 794–95. *See also* Ad.Rec. Vol. XIV, Tabs 29 and 30.

Subsequently, Mr. Petrou took the vouchers and receipts to his supervisor, Mr. Schulz, the Chief of the General Accounting Division. Ad.Rec. Vol. III at 408, 441. Mr. Petrou did not mention that the receipts were filled in to the best of Plaintiff's recollection. *Id.* at 441. After he reviewed the receipts and vouchers, Mr. Schulz concluded, based on his twenty years of experience as an auditor, that Plaintiff had submitted false vouchers, claiming money he had not spent. *Id.* at 420–21. He referred the matter to AAFES Safety and Security Division, who then referred the case to the Air Force Office of Special Investigation ("AFOSI"). *Id.* at 510, 553–54. AFOSI conducted an investigation and submitted a final report. Ad.Rec. Vol. XIII, Tab 13. AAFES Safety and Security later prepared a supplemental report. Ad.Rec. Vol. XV, Tab 9.

On October 22, 1985, prior to the initiation of the AFOSI investigation, Plaintiff submitted a third subsistence voucher. Ad.Rec. Vol. XIV, Tab 7. Because this voucher covered a period of time when Plaintiff was staying first at a hotel and then at an apartment, Mr. Schulz asked Plaintiff on November 7, 1985 to put his apartment expenses on a separate voucher. Ad.Rec. Vol. III at 416–17; Vol. IX at 1600; Vol. XV, Tab 19. Plaintiff complied and on December 16, 1985, he prepared and submitted a fourth voucher. Ad.Rec. Vol. XIV, Tab 8. On December 17, 1985, Plain-

tiff prepared and subsequently submitted a fifth and final voucher. *Id.*, Tab 9.

B. *Administrative Proceedings.*

The statutory procedures generally applicable to federal employees subjected to separation for cause (*see* 5 U.S.C. §§ 7513, 7701, 7703) are inapplicable to AAFES employees. *See* 5 U.S.C. § 2105(c). Instead, the applicable rights and procedures are provided by regulation. *See* Army Regulation (AR) 60–21/Air Force Regulation (AFR) 147–15 (reproduced in pertinent part at Ad.Rec. Vol. XIV, Tab 1).

Following his review of the investigative reports, defendant Colonel Lynch caused an Advance Notice of Separation for Cause to be prepared and issued to Plaintiff on February 24, 1986. Ad.Rec. Vol. XIII, Tab 1. The Advance Notice specified the basis for the proposed action and advised Plaintiff of his right to reply. *Id.* On March 3, 1986, Plaintiff submitted a written response to the Advance Notice through his attorney. *Id.* at Tab 4. Following considerable deliberation and consideration of Plaintiff's reply (Ad.Rec. Vol. VII at 1245–46), Colonel Lynch issued a Final Notice of Separation for Cause, which was delivered to Plaintiff on March 12, 1986. Ad.Rec. Vol. XIII, Tab 6. Although some of the specific allegations of misconduct were resolved in Plaintiff's favor by Colonel Lynch, the Final Notice stated essentially the same basis for the action as appeared in the Advance Notice. *Id.* Plaintiff was separated on June 3, 1986. Amended Complaint, ¶ 2.

Plaintiff appealed Colonel Lynch's decision. Ad.Rec. Vol. XIII, Tab 8. An evidentiary hearing before Mr. Compton, an AAFES Hearing Examiner, began on April 28, 1986, and continued on April 29, 30, May 2, 5, 7, 9, 12, 13, and 14, and concluded on May 16, 1986. Ad.Rec. Vol. XVI, Tab D at 1. Following submission of post-hearing briefs by both counsel (Ad.Rec. Vol. XVI, Tabs E and F), Mr. Compton rendered a report including proposed findings and a recommendation that the separation for cause be confirmed. *Id.* at Tab D. Thereafter, following review by AAFES Office

of General Counsel (*id.* at Tab C), General Long reviewed the record, including the transcript, and, on December 1, 1986, adopted the findings and recommendation of the Hearing Examiner. *Id.* at Tab B. General Long's decision constituted final administrative action. AR 60–21/AFR 147–15, para. 3–39a.

### COUNTS ONE, TWO, AND THREE

In Count One of his Amended Complaint, Plaintiff alleges that Colonel Lynch's and AAFES's negligent decision to terminate him resulted in a deprivation of a property interest without due process in violation of the Fifth Amendment. In Count Two of his Amended Complaint, Plaintiff alleges that General Long violated his right to due process under the Fifth Amendment and the Administrative Procedure Act by participating in the prosecutorial process leading to his termination and later sitting as an "appellate authority" performing quasi-judicial functions. Further, Plaintiff contends that General Long's refusal to reinstate him resulted in a deprivation of a property interest without due process in violation of the Fifth Amendment. In Count Three, Plaintiff alleges that AAFES, Lynch, and Long have deprived him of a liberty interest protected by the Fifth Amendment because they charged him with the commission of a felony and created a record of such wrongdoing.

■ Defendants contend that the constitutional tort claims in Counts One, Two, and Three against AAFES and the individual Defendants in their official capacities are barred by sovereign immunity since the United States cannot be sued without its consent and it has not consented to suit for damages arising from constitutional torts. *E.g., Lehman v. Nakshian,* 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299, 309 (5th Cir. 1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct.

1458, 89 L.Ed.2d 716 (1986). Plaintiff claims that AAFES is not a sovereign; hence, the claims against it, and presumably also against the individual Defendants in their official capacity, are not barred by sovereign immunity.

Plaintiff's argument that AAFES is not a sovereign is premised on the fact that AAFES is a non-appropriated fund instrumentality and, consequently, any award of damages against it would not come from the public treasury. However, the Supreme Court has held that AAFES is an arm of the government which is entitled to the immunities from suit enjoyed by the United States. *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 733–34, 102 S.Ct. 2118, 2121–2122, 72 L.Ed.2d 520 (1982). *See also, Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc.,* 632 F.2d 680, 692 (7th Cir.1980). The Court concludes that AAFES and the individual Defendants in their official capacity are immune from suit.

The individual Defendants further move this Court to dismiss Counts One, Two, and Three against them in their personal capacity because these Counts are precluded by the Supreme Court's holding in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Plaintiff contends that these Counts are not barred by *Bush.*

■ The right of an individual citizen to sue for damages for alleged constitutional deprivations by a government official was established by the Supreme Court in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, the Court in *Bivens* cautioned that a damage remedy arising directly under the Constitution would not be implied where there were "special factors counselling hesitation in the absence of affirmative action by Congress ...".[1] *Id.* at 396, 91 S.Ct. at

---

1. When the words "special factors counselling hesitation" were first used in *Bivens,* the Supreme Court illustrated its meaning by referring to *United States v. Standard Oil Co.,* 332 U.S. 301, 311, 316, 67 S.Ct. 1604, 1609, 1612, 91 L.Ed. 2067 (1947) and *United States v. Gilman,* 347

U.S. 507, 509, 511–13, 74 S.Ct. 695, 696, 697–698, 98 L.Ed. 898 (1954). In *Standard Oil,* the Supreme Court concluded that issues involving federal fiscal policy would constitute a factor counselling hesitation. In *Gilman,* the Supreme Court concluded that issues involving the rela-

2004. In *Bush,* the Supreme Court addressed the issue of whether a "special factor" existed so as to preclude judicial action on a damage suit where a government employee was suing a government agent for alleged constitutional violations associated with his employment.

In *Bush,* a government employee sued his supervisor to recover damages for the alleged deprivation of his First Amendment rights caused by a disciplinary demotion. The Fifth Circuit concluded that the relationship between the Federal Government and its civil service employees was a special factor counselling against the judicial recognition of a damages remedy under the Constitution. *Bush v. Lucas,* 647 F.2d 573, 576 (1981). In denying the availability of a *Bivens* remedy, the Fifth Circuit noted that the role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally. *Id.* The Supreme Court agreed, emphasizing that the constitutional claims arose out of an employment relationship that was governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States. *Bush,* 462 U.S. at 368, 103 S.Ct. at 2406.

Although *Bush* involved a federal employee covered by the Civil Service Reform Act (CSRA) seeking damages for an alleged First Amendment violation, the Eleventh Circuit has specifically applied the *Bush* rationale to bar a *Bivens* suit in a case remarkably similar to the present case. *Dynes v. Army and Air Force Exchange Service,* 720 F.2d 1495 (11th Cir. 1983). In *Dynes,* the plaintiff, an employee of AAFES, brought suit against AAFES for allegedly violating his constitutional due process rights by its decision to terminate his employment. The district court granted AAFES summary judgment based on *Bush* and the Eleventh Circuit affirmed.

The plaintiff in *Dynes* attempted to distinguish *Bush* on two grounds. First, he argued that Bush's claim was based on a First Amendment violation, while his claim arose from a due process violation. Relying on the Supreme Court's analysis in *Bush,* the Eleventh Circuit declined to create a new remedy regardless of which constitutional right had allegedly been violated. *Id.* 720 F.2d at 1498. The second distinguishing ground raised by the plaintiff was that his claim involved an employer/employee relationship governed by the AAFES regulations, rather than the civil service regulations applicable in *Bush.* The Eleventh Circuit dismissed this distinction as inconsequential and noted that "[b]ecause Dynes is a federal employee whose claim arises out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, *Bush v. Lucas* dictates that the regulatory scheme not be supplemented with a new judicial remedy." *Id.* Plaintiff in the present case contends that the Eleventh Circuit reached an erroneous conclusion.

The specific issue presented in this case, an AAFES employee seeking damages against his supervisors for alleged constitutional due process violations, has not been addressed by the Fifth Circuit. However, the Fifth Circuit has cited the Eleventh Circuit decision in *Dynes* with approval. *Gremillion v. Chivatero,* 749 F.2d 276, 278 n. 9, 279 n. 14 (5th Cir.1985). The Fifth Circuit has also applied the *Bush* rationale to affirm a district court's dismissal of a federal employee's *Bivens* action alleging First and Fifth Amendment violation where the employee was subject to Veterans Administration regulations "which were specifically designed to offer less protection than the CSRA." *Heaney v. United States Veterans Administration,* 756 F.2d 1215, 1218 (5th Cir.1985). In *Heaney,* the Court stated:

> [w]here a coordinate branch of the government has provided a government

tions between the United States and its employees should be deferred to congressional policy determinations and, hence, would constitute a factor counselling hesitation. In summary, the special factors that the Supreme Court has rec-

ognized do not concern the merits of the particular remedy that was sought; rather, they related to the question of who should decide whether such remedy should be provided. *Bush,* 462 U.S. at 380, 103 S.Ct. at 2412.

employee with a procedure under which a constitutional claim arising out of the employment relationship is cognizable and some measure of relief may be obtained, a nonstatutory damage action is not available for discharge, demotion or other adverse personnel actions absent clear evidence of an intent by the coordinate branch not to foreclose the non-statutory damage remedy.

*Id.* at 1220.

The Court concludes that *Bush* is controlling in the present case. "[A]n elaborate remedial system ... has been constructed step by step" and Plaintiff should not be allowed to augment this system with a *Bivens* action against the individual Defendants in Counts One, Two and Three. *Bush,* 462 U.S. at 388, 103 S.Ct. at 2416. The Court rejects Plaintiff's attempt to limit *Bush* to barring *Bivens'* actions only where the remedial system was Congressionally created. As the court in *Dynes* concluded, AAFES disciplinary regulations satisfies the *Bush* requirement of an "elaborate remedial system."

### COUNTS FOUR AND FIVE

■ In Counts Four and Five, Plaintiff alleges that AAFES and the United States Department of the Army ("the Army") violated the Privacy Act, 5 U.S.C. § 552a(e)(5) and (6).[2] Section 552a(e) provides in relevant part:

Each agency that maintains a system of records shall—

(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

(6) prior to disseminating any record about an individual to any person other than an agency, unless the dissemina-

tion is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;

. . . .

Plaintiff alleges that AAFES and the Army intentionally and willfully failed to maintain Plaintiff's records in accordance with the above standard. Specifically, Plaintiff contends that AAFES and the Army improperly maintained the following documents:

(1) A "Serious Incident Report," prepared by the AAFES Safety and Security Division, dated December 24, 1985;

(2) A "Memorandum for Record," prepared by the AAFES General Accounting Office, dated February 21, 1986;

(3) An "Employer's Response to Initial Claim for Unemployment Compensation," prepared by the AAFES Administrative Division—Personnel Branch, dated June 13, 1986; and,

(4) A "Memorandum of Inquiry—UA Misconduct—HQ AAFES," dated January 24, 1986.

Further, Plaintiff claims that AAFES willfully and intentionally disseminated the "Employer's Response" (document Number 3 above) and a "Memorandum for Commander" to the Texas Employment Commission ("TEC") in violation of Section 552a(e)(6).

■ The gravamen of Plaintiff's Privacy Act claims is apparently that he did not commit the fraud which was the basis for his discharge; therefore, the agency records which alleged or concluded that he did are not accurate.[3] Plaintiff had sufficient opportunity provided by AAFES regulations to challenge the determination that he committed the fraud. The Court concludes that Plaintiff's true aim in Counts Four and Five is to collaterally attack the

---

2. Plaintiff brings Counts Four and Five under the jurisdiction provided by 5 U.S.C. § 552a(g)(1) and (5).

3. Plaintiff contends that such documents, detailing AAFES's accusations, caused his discharge and caused him to accrue attorney fees for the

TEC proceedings. However, the cause of Plaintiff's discharge was the agency's determination that he did commit the fraud; the documents in question merely memorialize this determination.

correctness of the finding supporting the discharge decision.

Relying on *Borrell v. United States International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982), Plaintiff contends that an aggrieved federal employee may bring an action under the Privacy Act, despite the fact that he may also have a complaint relating to an adverse personnel action. The Court agrees that a claim under the Privacy Act could in other circumstances coexist with a claim for an adverse personnel action. However, the Privacy Act claim must be more than an end-run around an unfavorable agency decision. Moreover, the Court notes that in *Borrell,* the District of Columbia Circuit never reached the issue of whether the plaintiff had sufficiently stated a Privacy Act claim. The court concluded that the district court's findings were not specific enough and, therefore, they remanded the Privacy Act claim to the district court.

■ The Privacy Act allows for the amendment of factual or historical errors but is not a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies. *Pellerin v. Veterans Administration,* 790 F.2d 1553, 1555 (11th Cir.1986) (In *Pellerin,* the Eleventh Circuit did not specify the exact subsection of § 552a that was at issue). *"Moreover, it may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions." Id.* (quoting from *Rogers v. United States Dept. of Labor,* 607 F.Supp. 697 (N.D.Cal.1985)) (emphasis added by the Eleventh Circuit). "The Privacy Act was not intended to shield [federal] employees from the vicissitudes of federal personnel management decisions." *Albright v. United States,* 732 F.2d 181, 190 (D.C.Cir.1984). Although Plaintiff strains to fit his case within the boundaries of the Privacy Act, his complaint really alleges only a wrongful personnel decision. *See Hubbard v. United States Environmental Protection Agency,* 809 F.2d 1, 5 (D.C.Cir. 1986).

## COUNT SIX

■ Plaintiff moves the Court for summary judgment on Count Six where he is seeking (1) a declaratory judgment that he is owed $7,695.84 unjustly withheld by AAFES, or (2) injunctive relief for recovery of the money, or (3) a determination that the taking of the $7,695.84 violated his constitutional due process rights. Before the Court can reach the merits of Plaintiff's summary judgment motion, it must first determine the threshold question asserted by Defendants of whether Plaintiff has alleged any proper basis for the Court's subject matter jurisdiction.

Both parties agree that the Court does not have subject matter jurisdiction over this claim absent a statute or other provision which clearly waives AAFES's defense of sovereign immunity.[4] Plaintiff contends that the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.,* provides such a waiver. Title 5 U.S.C. § 702 provides in relevant part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States. . . .

(emphasis added). Plaintiff argues that his claim under Count Six is one for equitable relief (*i.e.* declaratory and injunctive) rath-

---

**4.** Plaintiff first asserts that AAFES is not "the sovereign" and is therefore not protected by sovereign immunity. The Court rejected this argument previously in this opinion. *See supra* at 582.

er than for monetary relief; thus, § 702 of the APA effects a waiver of AAFES's sovereign immunity. The issue before the Court is whether Count Six should best be characterized as a claim for monetary or equitable relief.

The legal reasoning of the Fifth Circuit in *Amoco Production Co. v. Hodel,* 815 F.2d 352 (5th Cir.1987) is directly applicable to resolving this issue.[5] In *Amoco,* the plaintiff sought declaratory and injunctive relief from a decision by a tribunal of the Department of the Interior ("DOI") assessing them extra royalties and penalties. The plaintiff argued that its aim in the case went beyond any eventual claim for a refund.[6] *Id.* at 358. In *Amoco,* as here, no monetary damages were sought, but in Amoco, as here, money would be the natural consequence of a decision favoring the plaintiff. *Id.* at 361, 365. Although admitting that *Amoco* presented a "close case," the court concluded that the plaintiff was essentially seeking monetary relief. *Id.* at 361, 368.

■ The court reasoned that "the substance of the pleadings must prevail over their form."[7] *Id.* at 361. In determining the true character of a claim, the court concluded that a court must "search for the 'essence' of the claim." *Id.* at 362. A court must "undertake to discern the na-

ture of the relief being sought *and focus on the type of relief that will result* from the action" in determining whether the claim is seeking monetary or equitable relief. *Id.* (emphasis added). The court attached great significance to the fact that once the plaintiff obtained the declaratory judgment, the refund process would be instituted and a refund would be forthcoming.[8] *Id.* at 365. In summary, the court concluded that the plaintiff's "primary objective" or "ultimate aim" was to obtain monetary relief. *Id.* at 362.

Although Plaintiff has not requested monetary relief in Count Six, the Court must look beyond the form of the claim and focus on the type of relief that will result. Plaintiff readily admits that the "practical effect" of a declaratory judgment would be to require AAFES to pay Plaintiff $7,695.84. Plaintiff's Cross–Motion for Summary Judgment at 2. As in *Amoco,* once Plaintiff is armed with a declaratory judgment, the refund will be forthcoming. Clearly, the primary objective of Count Six is for Plaintiff to obtain $7,695.84.[9]

Plaintiff contends that the practical effect of many of the Court's equitable judgments relating to federal agency actions result in a transfer of money. Therefore, Plaintiff concludes "that it is not the trans-

---

**5.** The ultimate issue in *Amoco* was the same as the present case—whether to characterize a complaint as seeking monetary or non-monetary relief; however, the importance of this distinction was different. In *Amoco,* the plaintiff was attempting to avoid the Tucker Act's grant of exclusive jurisdiction to the Claims Court for monetary claims exceeding $10,000 by couching the complaint in terms of equitable rather than monetary relief. Since the Fifth Circuit's analysis of how to characterize the true nature of a claim is not directly tied to the Tucker Act, it is applicable to the present case.

**6.** The plaintiff argued that the DOI's error in valuing the gas for royalty purposes would be perpetuated in future audits concerning that lease (and other leases) if the error was not corrected by a court with jurisdiction to do so. Therefore, the plaintiff contended that obtaining a declaratory judgment establishing that the DOI's valuation was improper in order to prevent erroneous assessment was the main purpose of that lawsuit. Additionally, the plaintiff argued that it required an injunction against future use of the DOI's "erroneous" ruling. The

plaintiff acknowledged that a remand to the DOI for a recalculation of its royalty obligations would facilitate a subsequent administrative refund request. *Amoco,* 815 F.2d at 361.

**7.** Although the Fifth Circuit applied this statement to "the murky area of Tucker Act jurisprudence," this Court concludes that it is equally applicable anytime the true character of a claim is being questioned. *Amoco,* 815 F.2d at 361.

**8.** In distinguishing *Sarasota, Fla. v. EPA,* 799 F.2d 674 (11th Cir.1986), the Fifth Circuit noted that a judgment in *Sarasota* in favor of the plaintiff would only result in a remand to the EPA to consider the grant application and would in no way automatically result in a monetary gain for the plaintiff. *Amoco,* 815 F.2d at 366.

**9.** Unlike *Amoco,* Plaintiff has not stated any lofty goals he seeks to obtain through his request for declaratory and injunctive relief other than monetary relief. *See supra* note 6 and accompanying text. This is not a close case.

fer of money *per se,* but the legal predicate to the cause of action which properly characterizes a claim for relief." Plaintiff's Reply at 4. The Fifth Circuit addressed this issue as well in *Amoco.* The court recognized that a claim is not automatically transformed into a claim for monetary relief just because money may lurk in the background. *Id.* at 366. However, the court distinguished suits which are "necessarily connected" with the payment of money from suits where the granting of equitable relief has the incidental effect of requiring payments to be made by the government. *Id.* at 363. As in *Amoco,* Count Six is necessarily connected with the payment of money. The payment of money by the government cannot be said to be an incidental effect in this case.

## COUNT SEVEN

At long last the Court has arrived at Count Seven, where Plaintiff seeks judicial review of the final agency decision sustaining his termination for cause from AAFES. Both parties filed motions for summary judgment on this Count and agree that the following three issues are to be decided by the Court: (1) whether the charges of misconduct sustained in AAFES's final decision are supported by substantial evidence in the administrative record; (2) whether the decision to terminate Plaintiff's employment, rather than some lesser form of disciplinary action, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and (3) whether AAFES observed the procedures required by law when removing Plaintiff.

### A. *Standard and Scope of Review.*

The Fifth Circuit has held that a court's subject matter jurisdiction to review claims for non-monetary relief involving AAFES personnel decisions "flows from the confluence of 28 U.S.C. § 1331(a) and 5 U.S.C. § 702." *Sheehan v. Army and Air Force Exchange Service,* 619 F.2d 1132, 1141 (5th Cir.1980), *rev'd on other grounds,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). While Section 702 provides the right of review, Section 706 provides the proper scope and standard of review under the APA. Section 706 provides in relevant part:

> The reviewing court shall—
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Both sides agree that the Court's review for Count Seven is confined to the administrative record at the time of the agency's decision. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414–20, 91 S.Ct. 814, 822–25, 28 L.Ed.2d 136 (1971); *see* Defendants' Motion for Summary Judgment at 9; Plaintiff's Response at 9.

### B. *Were the Charges of Misconduct Against Plaintiff Supported by Substantial Evidence?*

The findings of misconduct sustained in the final agency decision must be upheld unless the Court concludes from reviewing the administrative record that they are unsupported by substantial evidence. The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Comm'n,*

383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed.2d 126 (1938)). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Id.* 383 U.S. at 620, 86 S.Ct. at 1026.

In the final administrative decision, General Long adopted the Hearing Examiner's determination that Plaintiff had submitted falsified and fraudulent subsistence vouchers and receipts for temporary living expenses in violation of paragraph 1–24, AR 60–21/AFR 147–15 [10] and 18 U.S.C. § 1001.[11] Ad.Rec. Vol. XVI, Tab B; Tab D at 16–19. The Court concludes that the agency decision was supported by substantial evidence in the record.

The rules and regulations governing subsistence payments to AAFES employees are set out in the Exchange Service Manuals (ESM). Ad.Rec. Vol. XIV, Tabs 3 and 4. Under these provisions, AAFES will reimburse an employee's lodging, meal and laundry expenses while the employee is occupying temporary living quarters as a result of a permanent change of station. *Id.* However, the employee is entitled to reimbursement only for those allowable expenses he actually incurs. *Id.*

In order to obtain subsistence reimbursement, an AAFES employee is required to complete and submit a subsistence allowance voucher. *Id.* Receipts for meal expenses are not always required to be submitted with the subsistence allowance voucher; however, if the amounts claimed for such expenses appear unreasonable or

excessive, AAFES may require submission of receipts prior to reimbursement. Ad. Rec. Vol. XIV, Tab 3. If the employee is requested to submit meal receipts and does not or cannot do so, claimed expenses may be disallowed or reduced to an amount determined to be reasonable. *Id.* Accordingly, AAFES employees are advised to keep meal receipts.[12] Ad.Rec. Vol. XIV, Tab 4.

General Long, by adopting the Hearing Examiner's findings, concluded that the subsistence vouchers were falsified and fraudulent. Ad.Rec. Vol. XVI, Tab D at 6, 11. Plaintiff contends that the itemized amounts on the vouchers were only estimates, but that the total accurately reflected what was actually spent. Ad.Rec. Vol. XVI, Tab D at 11; Vol. IX at 1427–28, 1590–91, 1602. Further, Plaintiff contends that some of the inaccuracies were accidental. Ad.Rec. Vol. IX at 1469–70.

The Court concludes that the record contains substantial evidence to support the final agency action. For example, the record shows that Plaintiff's claimed meal expenses were consistently and considerably higher than expenses claimed by other AAFES employees who transferred to Dallas within the same time frame. Ad.Rec. Vol. I at 65–71; Vol. III at 517–18. In addition, the verifiable meal receipts for Plaintiff and his family during this time period reflected substantially lower expenditures than Plaintiff claimed on the vouchers. Ad.Rec. Vol. XVI at 4; Vol. XIV, Tabs 12–20. As to one of the inaccuracies, Plaintiff contends he "forgot" to record a substantial credit he received on his hotel bill, even though (1) he submitted the claim less than three weeks after receiving the

---

10. "1–24. Falsification of records. a. Any employee who, for the purpose of concealing or misrepresenting a material fact, willfully or unlawfully alters, falsifies, or destroys, or causes to be altered, falsified, or destroyed official AAFES or other Government documents, records, or files, regardless of motive, is subject to separation for cause or other disciplinary action." Ad.Rec. Vol. XVI, Tab D at 17.

11. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by trick, scheme, or device a mate-

rial fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1001.

12. Apparently, receipts are seldom requested by AAFES; however, the EMS clearly advises employees to keep them. *See* Ad.Rec., Vol. VIII at 1347–48; Vol. XIV, Tab 4.

credit, and (2) he should have been reminded of this credit because his "accounting system" should have been substantially out of balance for the amount of credit. Ad. Rec. Vol. XVI, Tab D at 7. These examples, as well as others throughout the record, clearly evince substantial support for the agency's charges of misconduct.

Much of Plaintiff's arguments in his Motion for Summary Judgment and his Response to Defendants' Motion for Summary Judgment rely on Plaintiff's truthfulness and credibility as a witness. Plaintiff testified at length in the administrative hearing and attempted to explain the numerous discrepancies and mistakes in his vouchers and to negate any evidence of intent to defraud AAFES or to falsify documents. Ad.Rec. Vol. IX at 1426–1621; Vol. X at 1684–1877; Vol. XII at 2140–2255. The Hearing Examiner specifically found each of the proffered explanations unworthy of belief and generally stated that Plaintiff could not be relied on to be truthful. Ad. Rec. Vol. XVI, Tab D at 4–10, 18.

■ The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor.[13] *Griessenauer v. Dept. of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985). Here the Hearing Examiner credited the testimony of Defendants' witnesses and rejected Plaintiff's conflicting testimony. The record fully supports the Hearing Examiner's choice. Plaintiff has given us no convincing reason to reject those credibility determinations and we find no basis for doing so.

Plaintiff also argues in his Motion and in his Response that the Hearing Examiner ignored evidence which supported his case and that the Hearing Examiner continued to consider the general allegation of wrongdoing rather than limit his findings to the specific allegations of regulatory and statutory violations.[14] The Court does not agree. The Hearing Examiner's findings state that he considered "all matters in record" (Ad.Rec. Vol. XVI, Tab D at 18), but found no evidence which convinced him that Plaintiff actually spent the amount he claimed on his subsistence vouchers. *Id.* at 11. The Hearing Examiner specifically addressed the more salient of Plaintiff's evidence in a section titled "Evidence for the Appellant".[15] *Id.* The Court concludes that Plaintiff's evidence was not ignored, but was merely found to be unconvincing. Further, the Hearing Examiner stated that he disregarded the general charge of wrongdoing and based his findings on the specific charges. The Court finds no reason to disbelieve him. In summary, even though there is some evidence in the record to support Plaintiff's case, the presence of some contrary evidence does not prevent an administrative agency's decision from being supported by substantial evidence. *Consolo*, 383 U.S. at 620, 86 S.Ct. at 1026.

## C. Was the Penalty of Separation a Valid Exercise of Agency Discretion?

■ "It is old law, of course, that an agency sanction within statutory limits can

---

13. The Court notes that Plaintiff's behavior at times was obstreperous and detrimentally influenced the Hearing Examiner's opinion of his demeanor as an appellant and witness. On one occasion, the Hearing Examiner interrupted Plaintiff's testimony to warn him that "... part of the things that I look for in these hearings is the demeanor of the witness and ... you realize that ... you are not helping yourself by behaving this way." Ad.Rec. Vol. IX at 1560. Another time, the Hearing Examiner asked Defendants' witness to leave the room and then admonished Plaintiff to please stop "mak[ing] faces at the witness" and further threatened to terminate the hearing if Plaintiff could not comply with his warning. Ad.Rec. Vol. VI at 1017. His statements plainly indicated that this was not the first time Plaintiff had "made faces" at witnesses. *Id.*

14. In addition to specific allegations of violations, AAFES originally alleged that "all matters which are inconsistent, misstated, inaccurate in amount, or otherwise incorrect, form the basis for this action." Ad.Rec. Vol. XVI, Tab D at 10. Plaintiff objected to this general charge because it failed to give him notice of the specific acts of misconduct with which he was being charged. *Id.* at 10–11.

15. A factfinder need not comment on or make specific findings regarding every piece of evidence or every argument advanced by a party. See *Talley v. United States Postal Service*, 720 F.2d 505, 507 (8th Cir.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984).

be upset only if it reflects an abuse of discretion." *Haltmier v. Commodity Futures Trading Comm'n,* 554 F.2d 556, 563 (2d Cir.1977) (citations omitted). Courts have expressed "a great reluctance ... to become enmeshed in the disciplinary process [of an agency] and, accordingly, great deference is accorded to the sound discretion of the agency in such matters." *Weston v. U.S. Dept. of Housing & Urban Development,* 724 F.2d 943, 949 (Fed.Cir. 1983). Agency choice of sanction may constitute an abuse of discretion only in a narrow range of circumstances: if the sanction is "unwarranted in law or ... without justification in fact...." *Butz v. Glover Livestock Comm'n,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973) (quoting *American Power Co. v. SEC,* 329 U.S. 90, 112–13, 67 S.Ct. 133, 145–46, 91 L.Ed. 103 (1946)). The Court concludes that these circumstances are not present here.

Applicable AAFES regulations generally provide that an employee may be separated for cause if his or her on-the-job misconduct involves violation of laws, regulations, rules or procedures and other lesser forms of discipline are determined to be inappropriate because the acts of misconduct are of such a nature that they are incompatible with the best interests of AAFES. Affidavit of Colonel Lynch, Attachment 2, AR 60–21/AFR 147–15, ¶¶ 3–4a and 3–8a. More particularly here, falsification of Government documents is expressly declared to be an appropriate basis for separation for cause. *Id.* at ¶ 1–24.

In addition to the fact that Plaintiff's separation is authorized by regulation, it is clear that numerous courts have held that separation is an appropriate penalty for Government employees who falsify travel and subsistence vouchers. *E.g., Quinton v. Department of Transportation,* 808 F.2d 826 (Fed.Cir.1986); *Tucker v. United States,* 624 F.2d 1029, 224 Ct.Cl. 266 (1980). Thus, the penalty here is plainly not unwarranted in law.

Further, although termination seems a harsh punishment for someone with an unblemished twenty-four year record, it is not without justification in facts. Colonel Lynch's decision to terminate Plaintiff was made only after a detailed [16] review of the evidence, the specifics of the charges, Plaintiff's length of service, his previous employment record, and other facts and circumstances pertaining to this case.[17] Ad.Rec. Vol. VII at 1242–46. The Court

---

16. Colonel Lynch estimated that he spent approximately twenty hours on reviewing this case and making his decision to terminate Plaintiff. Ad.Rec. Vol. VII at 1245.

17. The parties agree that the factors specified in *Douglas v. Veterans' Administration,* 5 M.S.P.B. 313, 332, 5 M.S.P.R. 280 (1981) are relevant in determining the appropriateness of the penalty selected by the agency. The *Douglas* factors are: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's past job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. The Court concludes that the factors which are relevant to this case were considered by Colonel Lynch and, on the whole, weighed in favor of his decision to terminate Plaintiff's employment. *See* Ad.Rec. Vol. VII at 1242–46; Vol. XVI, Tab D at 12. *See also Nagel v. Dept. of Health and Human Services,* 707 F.2d 1384, 1386 (Fed.Cir.1983) (the *Douglas* factors are not to be applied mechanically and consideration of irrelevant factors is not required).

defers to Colonel Lynch's well-reasoned decision. *See* Ad.Rec. Vol. XVI, Tab D at 12.

D. *Were Procedures and Rights Afforded by the Constitution, Applicable Laws, and Regulations Observed?*

As set out above, AAFES has, in all material respects, followed the prescribed regulations governing separations for cause. *See supra* at 581–582. These regulations more than satisfy minimal due process requirements. *See Bush v. Lucas,* 462 U.S. 367, 378 n. 14, 386–88, 103 S.Ct. 2404, 2412 n. 14, 2415–16, 76 L.Ed.2d 648 (1983) (similar procedural scheme is "clearly constitutionally adequate"). The alleged deficiencies cited by Plaintiff in his Motion for Summary Judgment, his Response to Defendants' Motion for Summary Judgment, and his Response to Defendants' Statement of Undisputed Facts and Issues of Law (filed November 5, 1987) did not deprive Plaintiff of his constitutional due process rights or any other right afforded by applicable laws or regulations which were cited to the Court. Further, none of the cited deficiencies constitute prejudicial error. 5 U.S.C. § 706. The extensive administrative procedure followed in this case more than adequately protected Plaintiff's rights under the constitution, laws, and regulations.[18]

## CONCLUSION

Defendants' Partial Motion to Dismiss is GRANTED. Individual Defendants' Separate Motion to Dismiss or, alternatively, for Summary Judgment is GRANTED. Plaintiff's Cross–Motion for Summary Judgment as to Count Six is DENIED. Defendants' Motion for Summary Judgment as to Count Seven is GRANTED. Plaintiff's Cross–Motion for Summary Judgment as to Count Seven is DENIED.

SO ORDERED.

---

**18.** The general charge, *supra* at 589 n. 14, did not adequately provide Plaintiff with notice of the specific charges on which he was charged. However, as noted above, the Court can find no reason to disbelieve the Hearing Examiner's statement that he disregarded this charge when making his finding. Ad.Rec. Vol. XVI, Tab D at 10–11.