**Robert L. BRADLEY, Jr., Petitioner,**

v.

**VETERANS ADMINISTRATION, Respondent.**

**No. 89–3201.**

United States Court of Appeals, Federal Circuit.

March 30, 1990.

---

James E. Nelson, of Nelson, Hager & Pancake, Huntington, W.Va., argued for petitioner.

Peter G. Barber, of the Civ. Div., Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Helene M. Goldberg, Asst. Director. Of counsel was Ginny Hamm, of the Dept. of Veterans Affairs, Lexington, Ky.

Before MARKEY, Chief Judge, and RICH and NIES, Circuit Judges.

NIES, Circuit Judge.

Robert L. Bradley, Jr., seeks review of the final decision of the Merit Systems Protection Board, Docket No. SL07528810128, issued February 7, 1989, sustaining his removal from the Veterans Administration. 39 MSPR 598. Mr. Bradley challenges the Board's decision that the agency proved that he "willingly and knowingly submitted falsified travel claims and inaccurate information with the express purpose of defrauding the government." We agree with petitioner and, accordingly, reverse.

I

Does substantial evidence support a finding that Mr. Bradley made a misrepresentation on travel forms with intent to defraud the government?

II

Our jurisdiction over this appeal from the Board is founded upon 28 U.S.C. § 1295(a)(9) (1982). Pursuant to 5 U.S.C. § 7703(c) (1988), when reviewing an appeal from the MSPB, this court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

... or

(3) unsupported by substantial evidence.

Petitioner here asserts that the Board's conclusion that he willingly and knowingly supplied false information to agency officials with an intent to defraud the government is unsupported by substantial evidence. Substantial evidence is defined as:

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229 [59 S.Ct. 206, 216, 83 L.Ed. 126] (1938). Accordingly, it "must do more than create a suspicion of the fact to be established...." *Labor Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660] (1939).

*Universal Camera Corp. v. Labor Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). We must determine whether, considering the record as a whole, the agency's evidence is sufficient to be found by a reasonable factfinder to meet the evidentiary burden applicable to the particular case. *Jackson v. Veterans Admin.*, 768 F.2d 1325 (Fed.Cir.1985); *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 379 (Fed.Cir.1983) (Nies, J., additional views). In this case, the agency had the burden to prove by a preponderance of the evidence that Mr. Bradley intended to defraud the government.

### III

Robert L. Bradley, Jr., married Pilar O. Bradley in 1971 in Mexico; their daughter, Sharon, was born in 1979. Petitioner and Pilar separated in 1980. Petitioner met Noemi G. Saune in 1981, and they started living together. Their daughter, Karen Bradley, was born in 1983. From the time of his separation from Pilar, Mr. Bradley continued to provide financial support for Pilar and Sharon. Pilar and Sharon, who resided in Mexico, visited the United States on several occasions, including living with Mr. Bradley's father in West Virginia while Sharon attended school for the 1984–85 academic year. After divorcing Pilar in 1986, he married Noemi.

Mr. Bradley held the position of Supervisory Librarian, Chief, Library Service, GS–12, with the Veterans Administration in Chillicothe, Ohio, from November 1984 until the summer of 1986 when he requested and obtained an intra-agency transfer to Lexington, Kentucky. Several months before his move, he completed, signed and submitted an Intra–Agency Transfer Request form (form 3918) listing his then-wife, Pilar, and daughter, Sharon, as dependents. Despite the separation, these individuals continued to be shown in his personnel records as his dependents. The form 3918 requested authorization for travel to Lexington in his car, for subsistence expenses for himself and his dependents, and for moving expenses associated with his transfer. Authorization form 3918 specifies no dollar amounts for estimated expenses, but on the basis of the request showing family dependents, the agency authorized up to $12,004 for the expenses of the move, including $700 for "miscellaneous moving expenses."

After the move, Mr. Bradley submitted a travel voucher for $1500 for temporary quarters in Lexington which he specified was for himself alone. That amount is not questioned. He also submitted another voucher for expenses associated with his move in the amount of $2,351.90. Of that amount, $1,615 was claimed for lease termination expenses, not in dispute; $36.90 was for mileage, also not in dispute; and $700 was for "miscellaneous moving expenses." The dispute arises over his claim for $350 of the $700 for "miscellaneous moving expenses."

Under the travel guidelines, an employee is entitled to $350 without documentation for miscellaneous moving expenses in connection with a transfer.[1] The allowance is designed to cover incidental expenses such as: cutting and fitting rugs and drapes, losses on prepaid contracts; the costs of a new driver's license, and similar items.[2] A larger amount can be claimed for such expenses with documentation. An employee who moves with an "immediate family" is entitled to an additional $350 in undocumented expenses regardless of the number of people in his family who move with him. *See footnote* 1. "Immediate family" includes any dependent child who is a member of the employee's household.[3]

There is no dispute that Mr. Bradley was entitled to the additional $350 for miscellaneous moving expenses if he had listed his

---

1. The *Guide for Incurring and Claiming Expenses Incident to Change of Official Station* provides:

   A claim [for miscellaneous expenses] may be made without supporting evidence of expenses, in which case the allowance will be as follows:
   a. $350 ... for an employee without immediate family;
   and
   b. $700 ... for an employee with immediate family.

   The parties cite to no regulations but treat the guidelines as if they were. We note that OPM has recently put out general travel and relocation regulations, which took effect May 10, 1989. To a large extent they parallel the provisions of the guidelines discussed here. *See, e.g.,* 41 C.F.R. § 302–3.3 (1989). *See also* 5 U.S.C. § 5724(a) (1982).

2. *Cf.* 41 C.F.R. § 302–3.1 (1989).

3. Within the *Guide,* "Immediate family" is defined, in pertinent part, as:

   Any one of the following named members of the employee's household at the time he or she reports for duty at the new permanent duty station....
   b. Children of the employee ... who are unmarried and under 21 years of age ... (The term "children" shall include natural offspring ...)

natural daughter Karen on his form 3918 because she, in fact, lived with her father in Chillicothe and moved with him to Lexington. The government asserts that it was defrauded because he did not list her.

Mr. Bradley asserts that he did not list his daughter Karen on the 3918 request form because he wanted to protect his second "family" from embarrassment and to maintain his privacy about his personal life. The existence of his second "family" was not known to his office colleagues or even to his father. On the actual voucher on which he claimed the $700 for miscellaneous moving expenses, no names of the family members involved in the move are requested. He testified that, when he submitted the voucher claiming the $700, some three months after submitting the form 3918 and about a month after moving, he knew from reading the travel guidelines given to him by the agency that he was entitled to the extra $350 because Karen moved with him:

> The travel voucher in question I believe was the one for miscellaneous moving expenses, of which I felt that I was entitled to. And that I was entitled to due to the fact that Karen was my daughter. The instructions—the booklet that they gave us for the change—the permanent move or whatever it's called, stated in there that if you do have—you know, if you have children you are entitled to that. It didn't state the situations under which you are entitled, it just stated that you were entitled to that money. I felt that I was entitled to that full $700.

Sometime after Mr. Bradley began work in Lexington, the agency was informed by an anonymous source that Mr. Bradley moved his second "family" to Lexington, not his first. Almost a year after the move, his supervisor called Mr. Bradley into his office and began inquiring about a person listed in the Lexington telephone directory as "N.S. Bradley" at Mr. Bradley's address. The supervisor also inquired whether Pilar and Sharon had travelled with him to Lexington. Mr. Bradley told him they had. Mr. Bradley testified that he thought that the supervisor was improperly inquiring into his personal affairs. The administrative judge (AJ) found the supervisor's interrogation at that time was not an *investigatory* interview. This averted Mr. Bradley's charge that the agency had committed a procedural violation of its regulation 821(F) which he asserted requires that an employee be advised of his/her right to remain silent in connection with an investigatory interview. When confronted by an official investigator several months later, Mr. Bradley told the truth about moving his second "family" to Lexington and he immediately repaid $350. The agency began removal proceedings thereafter and also turned the case over to the U.S. attorney for possible criminal proceedings under 18 U.S.C. § 287 (1988). Mr. Bradley was removed but no criminal charges were brought against him.

There is no dispute that the charges against Mr. Bradley required proof not only that he had misrepresented the family members who were involved in his move to Lexington, but also that he did so with an intent to defraud the government.[4] In essence, the agency imputes the names of Pilar and Sharon listed by Mr. Bradley on the authorization form 3918 to his later-submitted moving expense voucher which then, per the agency, becomes a false claim for $350 in miscellaneous moving expenses. The agency also infers an intent to defraud from Mr. Bradley's conversation with his Lexington supervisor in which he lied about Pilar and Sharon having accompanied him to Lexington.

The AJ found that the circumstances here did not give rise to an inference of an intent to defraud the government because

---

4. The issue of culpable intent as an element of a charge is not a stranger to this court or its predecessors. The Federal Circuit and its predecessor, the Court of Claims, have dealt with intent on numerous occasions. *See, e.g., Naekel v. Department of Transp.*, 782 F.2d 975 (Fed.Cir.1986); *Kumferman v. Department of Navy*, 785 F.2d 286 (Fed.Cir.1986); *Dennis v. Department of Health and Human Servs.*, 804 F.2d 670 (Fed.Cir.1986); *Howatt v. United States*, 228 Ct.Cl. 511, 657 F.2d 1204 (1981); *Tucker v. United States*, 224 Ct.Cl. 266, 624 F.2d 1029, 1032–33 (1980).

Mr. Bradley was entitled to the money and his "cover-up" was not material to his right to the $350. On appeal by the agency, the full board rejected Mr. Bradley's testimony that he actually believed Pilar and Sharon might travel with him to Lexington, thus, finding that Mr. Bradley did misrepresent the facts on form 3918. The board then inferred an intent to defraud from the "facts" that Mr. Bradley had "request[ed] subsistence expenses of $700 for temporary quarters for his dependents"; had misrepresented who were his "traveling companions"; and had claimed expenses for his wife, Pilar, that were incurred for Noemi, his fiancee.

It is readily apparent that the board misunderstood the factual basis for the charge against Mr. Bradley. The agency did not charge or prove that Mr. Bradley requested $700 "for temporary quarters" or that he submitted a claim for Noemi's expenses in the name of Pilar or that the $350 allowance was contingent on who were his actual "traveling companions." As indicated, the $350 for miscellaneous moving expenses is allowed without documentation to any employee whose move involves immediate family. It is not designed to pay for the family's expenses of travel, subsistence, or temporary quarters, which are allowed under other provisions. Thus, the board's factual inference of culpable intent is drawn from an erroneous factual basis. Further, the facts on which the agency relied to show culpable intent were (1) misrepresentation on form 3918 of the dependents involved in the move, (2) submission of a voucher claiming $700, and (3) Mr. Bradley's misrepresentation in the conversation with his supervisor. Assuming each of

these facts to be true,[5] we conclude they do not reasonably give rise to an inference that Mr. Bradley intended to defraud the government.

Mr. Bradley asserts that his misrepresentations as to his family members were merely to maintain his privacy concerning his personal life. The agency argues that his concern for privacy does not excuse misrepresentation of facts on government forms. However, the misrepresentation here is asserted to give rise to an inference of intent to defraud. A misrepresentation which does not support that inference is not material. Here the misrepresentation on form 3918 was not material because Mr. Bradley did not receive or attempt to receive a greater monetary benefit from the government than he would have been entitled to had he supplied accurate information.[6] The connection which the agency makes between form 3918 and the later submitted voucher may have been clear to the agency, but the forms and guidelines given to Mr. Bradley do not make that connection clear. What is clear is this incident could have been avoided by the simple expedient of having Mr. Bradley amend his form 3918. Under the guidelines, he was entitled to the $350 for Karen, as previously discussed. Thus, Mr. Bradley's misrepresentation on the 3918 form fails to give rise to an inference that Mr. Bradley submitted the subsequent voucher covering this $350 with intent to defraud the government.

With respect to the misinformation Mr. Bradley gave his supervisor, we agree that an employee may be disciplined for giving a supervisor false information related to his

---

**5.** Mr. Bradley disputes the board's finding that listing Pilar and Sharon on form 3918 was a misrepresentation because at the time he submitted that form he anticipated that Pilar and Sharon would go with him on the move. We need not resolve this issue.

**6.** See, e.g., Quinton v. Department of Transp., 808 F.2d 826 (Fed.Cir.1986) (overtime pay and per diem reimbursement); Ahles v. Department of Justice, 768 F.2d 327 (Fed.Cir.1985) (overtime compensation); Schaefer v. United States, 224 Ct.Cl. 541, 633 F.2d 945, 950–51 (1980) (travel reimbursement); Listerman v. Department of

Justice, 31 M.S.P.R. 179 (1986) (compensation in lieu of sick or annual leave, OWCP claim); Watson v. Department of Air Force, 34 M.S.P.R. 656 (1987) (falsified time cards resulting in increased earnings). Of course, the advantage to be secured is by no means limited to monetary gains arising from a falsification. See, e.g., Kissner v. Office of Personnel Management, 792 F.2d 133 (Fed.Cir.1986) (position of employment); Delessio v. United States Postal Serv., 33 M.S.P.R. 517 (1987) (position of employment); Gipson v. Veterans Admin., 682 F.2d 1004 (D.C. Cir.1982); Rodgers v. Department of Labor, 7 M.S.P.R. 719 (1981) (falsified mine inspections).

work or to an investigation into misconduct. However, the reason for the supervisor's inquiry was ambiguous at the time of the interview. The agency does not assert that it was an investigatory interview, and Mr. Bradley considered the conversation to be merely an indication that his supervisor disapproved of Mr. Bradley's lifestyle. While Mr. Bradley's statement shows an intent to deceive his supervisor on a personal level, it does not evidence that Mr. Bradley was attempting to secure a benefit from the agency not otherwise obtainable.

The agency finally contends, without pointing to record support, that even though Mr. Bradley did not actually monetarily benefit as a result of the misinformation he provided, he was laying the foundation for claiming reimbursements for a wide range of expenses to which he would be entitled only if Pilar and Sharon moved with him. This argument was first raised at oral argument on appeal, was not ruled upon at the MSPB, and is rejected for those reasons. *See Schwartz v. Department of Transp.*, 714 F.2d 1581, 1582 (Fed.Cir. 1983).

In short, the evidence that Mr. Bradley misrepresented the family members involved in the move on his 3918 form and in a conversation with his supervisor does not support an inference that he intended to defraud the government by his claim for $350 in miscellaneous moving expenses for a dependent.

### IV

#### Conclusion

For the foregoing reasons, the board's decision is reversed.

REVERSED.