996 F.2d 317
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
June P. THOMAS, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 92-3373.
 United States Court of Appeals, Federal Circuit.
 April 5, 1993.
 
 Before NIES, Chief Judge, and LOURIE and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 June P. Thomas (petitioner) seeks review of the March 12, 1992 decision of the Merit Systems Protection Board (Board) in Docket No. DC08318910224. In its decision, the Board affirmed the decision of the Administrative Judge (AJ) ordering payment of John Allen Thomas's Civil Service Retirement Fund lump sum benefits to Manuel de Jesus Thomas Rivas. We reverse.
 
 BACKGROUND
 
 2
 Petitioner is the surviving mother of the deceased, John Allen Thomas (hereinafter "Thomas"). Thomas was employed by the Department of Agriculture and was stationed in Puerto Rico, where he died on October 21, 1987. Thomas died without having designated a beneficiary for his lump sum benefits from the Civil Service Retirement Fund, which totaled $7,922.20 at the time of his death. Petitioner and Mr. Manuel de Jesus Thomas Rivas (hereinafter "Rivas") each claimed to be entitled to the lump sum.
 
 
 3
 Since Thomas did not designate a beneficiary for his benefits and since he was not married at the time of his death, under the relevant statute, the benefits were to be paid to any surviving children. 5 U.S.C. § 8342(c) (1988). In the absence of surviving children, they were to be paid to his parents. Id. In order to be paid under the statute as a surviving child, a claimant must be the deceased person's natural or adopted child. Rivas at first claimed the lump sum benefits on the ground that he was Thomas's adopted son and offered as proof an El Salvador "deed of acknowledgment" which Thomas had signed in 1980, recognizing Rivas as his son.
 
 
 4
 On August 25, 1988, the Office of Personnel Management (OPM) rendered an initial decision denying Rivas's claim on the ground that he had not established that he was Thomas's adopted son. On January 19, 1989, on reconsideration, OPM affirmed its initial decision, concluding that Rivas had failed to establish that he was Thomas's adopted child and noting that there was also no evidence that Rivas was Thomas's natural child. OPM explained to Rivas that "an examination of the retirement file shows that you were born at San Agustin, Department of Usulutan, Republic of El Salvador on February 10, 1955. The record shows that Mr. John A. Thomas did not initially enter El Salvador until 1972. Mr. John A. Thomas was a college student in the State of Virginia when you were born."
 
 
 5
 Rivas appealed OPM's reconsideration decision to the Board, at which point petitioner intervened. In the Board appeal, Rivas claimed for the first time to be Thomas's natural child. The AJ held a hearing on May 11, 1989, at which Rivas and his mother testified by telephone. On June 28, 1989, the AJ rendered a decision in which he reversed OPM's decision denying Rivas' claim and in which he ordered OPM to pay the lump sum to Rivas. The AJ concluded that the deed of acknowledgment which Thomas had executed conclusively established, as a matter of law, that Rivas was Thomas's natural child, and that he thus was entitled to the lump sum.
 
 
 6
 Petitioner petitioned the Board for review of the AJ's decision awarding her son's death benefits to Rivas, contending in her petition that Rivas had not established that he was either an adopted or a natural son of Thomas. On March 12, 1992, the Board rendered a decision affirming the AJ's decision ordering payment to Rivas, but on different grounds. The Board held that the deed of acknowledgment did not have the legal effect of conclusively establishing Thomas's paternity. Rather, it viewed the deed as establishing a rebuttable presumption that Rivas was the natural child of Thomas. The Board noted that evidence that Rivas was born in El Salvador in 1955 and that Thomas did not enter that country until the 1970's would be sufficient to rebut the presumption--unless there was credible evidence that Rivas's mother and Thomas "met and had sexual relations outside of El Salvador in 1954." After determining that there was such credible evidence, the Board concluded that Rivas had proved that he was Thomas's natural child. Chairman Levinson dissented from the Board's decision because he concluded that Rivas had failed to establish by a preponderance of the evidence that he was Thomas's biological son.
 
 DISCUSSION
 
 7
 We review the decision of the MSPB on a narrow standard. The decision must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1988). Cheeseman v. Office of Personnel Management, 791 F.2d 138, 140 (Fed.Cir.), cert. denied, 479 U.S. 1037 (1986). Here, petitioner argues that the Board's finding that Rivas proved he is Thomas's natural son is unsupported by substantial evidence. We agree.
 
 
 8
 Before the Board, it was undisputed that Rivas was born on February 10, 1955, in El Salvador; that in 1955, Thomas was a student living in Virginia; and that, after 1971, Thomas had a close, ongoing, personal relationship with Rivas. In concluding that the presumption established by the deed of acknowledgment had not been rebutted, the Board relied largely on the testimony of Rivas and his mother, Maria Nieves Zelaya Rivas, who each testified by telephone from El Salvador through an interpreter. Rivas testified that, in approximately 1971, Thomas came to El Salvador and met with his mother, who then introduced Thomas to him as his father.
 
 
 9
 Ms. Rivas testified that Thomas was Riva's natural father and that she met him in March of 1954, in a park, in Virginia. She could not remember where she entered the United States, but testified that she entered illegally and traveled by land for fifteen days until she came to "the city of Virginia." She could not remember the names of the people with whom she traveled, but stated that they are all dead. She testified that she met no men in the United States, other than Thomas, because she was afraid to go out. She did not testify to a reunion with Thomas in El Salvador.
 
 
 10
 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938). See also Bradley v. Veterans Admin., 900 F.2d 233, 234 (Fed.Cir.1990). We hold that, in this case, the Board's decision is not supported by such a quantum of evidence.
 
 
 11
 Rivas, of course, had no independent knowledge of whether Thomas was his natural father. Thus, his claim depended almost entirely on the testimony of Ms. Rivas. We find that testimony to be inherently improbable. See Dittmore-Freimuth Corp. v. United States, 390 F.2d 664, 685 (Ct.Cl.1968); Carosella v. United States Postal Serv., 816 F.2d 638 (Fed.Cir.1987).
 
 
 12
 Ms. Rivas presented an almost complete lack of memory except for the one fact that was critical to the case. Parroting the information in OPM's letter to Rivas denying the claim, she placed herself in Virginia, where Thomas had been a student at the time of Rivas's likely conception. She could not remember the names of the people with whom she claimed to have traveled on a fifteen day journey to Virginia and on her return to El Salvador. Yet, from a brief, albeit intimate, encounter in a park in an unknown city, she supposedly remembered Thomas well enough to identify him when he chanced to come to El Salvador some seventeen years later. Our credulity is further strained by the fact that if, as Ms. Rivas stated, she conceived her son with Thomas in March, 1954, and gave birth the following February, she was pregnant for over eleven months, a gestation period seemingly unprecedented in medical history.
 
 
 13
 Finally, we agree with the dissent below that the credibility of Rivas's claim was further undercut by the testimony of petitioner's witnesses, which appears to have been ignored by the AJ. Most significantly, Thomas's brother and Thomas's niece both testified that, on the day of Thomas's funeral, Rivas stated that he was not Thomas's blood son, but rather his adopted son.
 
 CONCLUSION
 
 14
 For the foregoing reasons, we hold that the conclusion of the Board that Rivas proved that he is Thomas's natural child is not supported by substantial evidence. Accordingly, the decision of the Board is reversed. The Board is directed to issue an order (i) vacating its decision and (ii) directing OPM to pay Thomas's lump sum benefits to petitioner.
 
 COSTS
 
 15
 Each side shall bear its own costs.
 
 REVERSED