NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**CHONG H. ROYAL,**
*Petitioner,*

v.

**DEPARTMENT OF THE ARMY,**
*Respondent.*

---

2010-3190

---

Petition for review of the Merit Systems Protection Board in case no. SF1221090670-W-1.

---

Decided: March 18, 2011

---

CHONG H. ROYAL, of Watsonville, California, pro se.

DEVIN A. WOLAK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before NEWMAN, GAJARSA, and PROST, *Circuit Judges*.

PER CURIAM.

Chong H. Royal petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied her request for corrective action sought in her Individual Right of Action ("IRA") appeal under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8). *See Royal v. Dep't of Army*, Docket No. SF-1221-09-0670-W-1, slip op. at 2 (M.S.P.B. July 20, 2010) ("*Final Order*"). For the reasons stated below, we *affirm*.

BACKGROUND

In mid-2006, Ms. Royal began a term-limited appointment as a Korean Language Instructor with the Army's Defense Language Institute Foreign Language Center ("DLIFLC"). Her initial assignment was in the Command Language Program ("CLP") at Continuing Education ("CE"), where she taught basic-level Korean language courses.

Beginning in late 2007, Ms. Royal's immediate supervisor, Robert Weckerle, expressed concern with her inability and/or refusal to teach an entire course by herself. At least two counseling sessions resulted. Contemporaneously, Ms. Royal sent a series of e-mails to her second-level supervisor, Steve Collins, alleging abusive behavior by Mr. Weckerle, including rudeness, use of profanity, and a suspected sexual relationship with another subordinate employee.

In April 2008, Ms. Royal was internally reassigned from the CLP to the School of Post-Basic Instruction ("PBI") at CE. She believed this was an interim move pending her placement in an overseas teaching position in Osan, South Korea. From the Agency's perspective, however, the move was not interim, and she was reas-

signed to: 1) better assess her teaching proficiency; and 2) accommodate her concerns about working under the supervision of Mr. Wekerle.

At PBI, the Agency continued its evaluation of Ms. Royal's teaching proficiency through regular classroom observation by her immediate supervisor, Dr. Kyoung-Kook Kim, and additional observation by Dr. Gyseon Bae, a member of the DLIFLC Faculty and Staff Development Division. Dr. Kim and Dr. Bae issued independent reviews that revealed deficiencies in Ms. Royal's ability to implement lesson plans with her students and a failure to demonstrate the appropriate level of teaching proficiency.

The Agency issued a written notice to Ms. Royal stating that CE management had decided not to renew her term appointment when it expired on December 19, 2008.[1] A Memorandum for the Record dated November 24, 2008, states that the reasons for this decision included Ms. Royal's poor performance, failure to improve, and the collective opinion of CE leadership that she "could [not] reasonably be expected to become the kind of performer that is needed for post-basic instruction . . . ."

Ms. Royal filed a complaint with the United States Office of Special Counsel ("OSC") alleging that the Agency's refusal to renew her term appointment was retaliation for

---

[1] The Agency first notified Ms. Royal on August 18, 2008, that her appointment would not be extended. At that time, the Agency attributed its decision to a "reduction in workload for FY 09 within the Korean Language Program" resulting from "changed national priorities for language training in the Armed Forces." This notice was withdrawn when the Agency corrected Ms. Royal's service computation to include her prior military service. Nevertheless, the context of downsizing was noted as supporting the CE leadership's decision not to extend Ms. Royal's appointment. *Initial Decision* at 6.

her whistleblowing. On March 31, 2009, OSC made a final determination to close its file on Ms. Royal's complaint. In doing so, OSC explained that there was no violation of 5 U.S.C. § 2302(b)(8) because Ms. Royal's disclosures did not appear to be protected communications and there was no reason to believe that the Agency's personnel action was causally connected to these disclosures.

Ms. Royal timely filed an IRA appeal with the Board. See 5 U.S.C. §§ 1214(a)(3), 1221. Because she voluntarily waived her right to a hearing, the appeal was decided based on the parties' written submissions. The administrative judge ("AJ") issued an initial decision denying Ms. Royal's request for corrective action with respect to alleged retaliation for whistleblowing activity. *Royal v. Dep't of Army*, Docket No. SF-1221-09-0670-W-1, slip op. at 1 (M.S.P.B. Nov. 17, 2009) ("*Initial Decision*"). In the *Initial Decision*, the AJ found that Ms. Royal had exhausted her administrative remedies before OSC, and Ms. Royal's allegations were sufficient to give the Board jurisdiction over her IRA appeal. *Initial Decision* at 3 (citing *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001)). Indeed, the AJ found that Ms. Royal's communications regarding Mr. Weckerle's profane language constituted protected whistleblowing, and circumstantial evidence implied that the whistleblowing was a contributing factor in the decision not to renew Ms. Royal's term appointment. *Initial Decision* at 3-4. The AJ nevertheless denied Ms. Royal's request for corrective action because he found that the Agency demonstrated by clear and convincing evidence that it would have taken the same personnel action in the absence of Ms. Royal's whistleblowing. *Id.* at 4-5. Ms. Royal then filed a petition for review requesting that the Board reconsider the AJ's initial decision.

The Board grants petitions for review only where the claimant presents new or previously unavailable evidence or the AJ makes an error interpreting a law or regulation. 5 C.F.R. § 1201.115.  In its *Final Order*, the Board found that Ms. Royal failed to prove either.  *Final Order* at 1. Accordingly, the Board denied Ms. Royal's petition for review and the AJ's initial decision became final.  *Id.* at 2. Ms. Royal timely filed an appeal to this court.  We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

STANDARD OF REVIEW

Our review of the Board's decision is limited.  By statute, we must affirm the Board's holding unless we find it to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c); *Barrett v. Soc. Sec. Admin.*, 309 F.3d 781, 785 (Fed. Cir. 2002).

DISCUSSION

Under 5 U.S.C. § 1221, a former federal employee, like Ms. Royal, may bring an IRA appeal to the Board alleging that a "personnel action" was taken in retaliation for whistleblowing.[2]  Normally, an IRA petitioner carries the burden of establishing a *prima facie* case of retaliation for whistleblowing.  An IRA petitioner establishes a *prima facie* case by demonstrating—by a preponderance of the evidence, i.e., the degree of relevant evidence that a reasonable person would accept as sufficient to find a

---

[2]     Personnel action" is defined at 5 U.S.C. § 2302 (a)(2)(A) and 5 C.F.R. § 1209.4(a).  We are satisfied that Ms. Royal was subject to one or more personnel actions. *See Initial Decision* at 3, 5.

contested fact is more likely to be true than untrue—that (1) she made a protected disclosure, and (2) the disclosure was a "contributing factor" in the agency's decision to take the personnel action. 5 U.S.C. § 1221(e); 5 C.F.R. §§ 1209.4(c), 1209.7; *see also Yunus*, 242 F.3d at 1371. The statute allows a petitioner to establish that the disclosure was a contributing factor via circumstantial evidence, i.e., the official taking the personnel action knew of the protected disclosure, and the personnel action was temporally correlated with the disclosure. 5 U.S.C. § 1221(e). But even if a petitioner makes this *prima facie* showing, the Board will not order corrective action if the agency shows—by clear and convincing evidence, i.e., a higher standard than preponderance of the evidence— that it would have taken the personnel action in the absence of the petitioner's whistleblowing. *Id.*; 5 C.F.R. § 1209.7(b); *Fellhoelter v. Dep't of Agriculture*, 568 F.3d 965, 970-71 (Fed. Cir. 2009).

In this case, the Board had jurisdiction, and the relevant legal standards were properly applied. Moreover, the well-reasoned *Initial Decision* is not arbitrary, capricious, or an abuse of discretion, and Ms. Royal does not challenge the Board's adherence to procedures required by law. Similarly, Ms. Royal does not present any challenges contesting the Board's application of the law.

We next review the Board's decision in order to determine whether it is supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley v. Veterans Admin.*, 900 F.2d 233, 234 (Fed. Cir. 1990) (quoting *Consol. Edison Co. v. Labor Board*, 305 U.S. 197, 229 (1938)). Substantial evidence is a deferential standard, however, and we cannot substitute our judgment for that of the Board. Instead, we consider only "whether,

looking at the record as a whole, the Agency's evidence is sufficient to be found by a reasonable fact finder to meet the evidentiary burden[s] applicable to the particular case." *Bradley*, 900 F.2d at 234.

As did the Board, we focus on the finding that the Agency would have taken the same personnel action in the absence of Ms. Royal's whistleblowing based upon deficiencies in her teaching performance. *Initial Decision* at 5. In October 2007, Ms. Royal initiated a series of emails to her supervisor, Mr. Weckerle, in which she explained that she was incapable of teaching the entire language course that she was required to teach and she was reluctant to accept this responsibility. She was counseled regarding her performance on at least two occasions. Ms. Royal's performance did not improve following her transfer to PBI. Two independent reviews based upon direct classroom observation identified deficiencies in Ms. Royal's ability to implement lesson plans, as well as a teaching quality that did not meet the level of instruction required for intermediate and advanced instruction in CE. Finally, Ms. Royal's teaching deficiencies were thoroughly documented in the November 24, 2008 Memorandum for the Record. Indeed, the Memorandum for the Record resulted from CE leadership meeting with her to explain their decision not to renew her term appointment. This evidence supports the Board's finding that the Agency's decision was based upon Ms. Royal's continuing performance deficiencies.

In her submission to this court, Ms. Royal does not present any arguments that warrant reversing the Board's decision. She suggests that the Agency would not have given her negative performance evaluations or allowed her limited-term appointment to expire but-for her whistleblowing. She therefore believes the Board erred by not ordering corrective action. But Ms. Royal's

submission offers no *evidence* of the conspiracy that she alleges, and this court cannot overturn the Board's decision based on mere speculation. In contrast, the Board's finding that the Agency would have taken the same personnel action even in the absence of Ms. Royal's whistleblowing is well-supported. Beyond the direct evidence of Ms. Royal's performance evaluations, we note specifically the Board's finding that the members of CE leadership who determined not to renew her term appointment lacked any motive to retaliate against her. *See Initial Decision* at 6. Further, the primary deciding official, Dr. Betty Lou Leaver, provided a sworn affidavit declaring that Ms. Royal's whistleblower allegations had nothing to do with the decision not to renew her term appointment.

Finally, Ms. Royal's evidence that she was dedicated and worked hard is inapposite. The Agency's decision was based on problems observed with Ms. Royal's teaching performance, despite recognition that she had "worked very hard." *Id.* We acknowledge that Ms. Royal received satisfactory performance evaluations in the past and was considered qualified by certain of her colleagues. Nevertheless, the record includes substantial evidence that the Agency would have would have taken the same personnel action in the absence of her whistleblowing.[3]

---

[3] In a March 2, 2011, letter requesting oral argument, Ms. Royal again suggests a conspiracy against her, and identifies potential witnesses. But "[o]ur precedent clearly establishes the impropriety of seeking a reversal of the [B]oard's decision on the basis of assertions never presented to the presiding official or to the [B]oard." *Oshiver v. Office of Pers. Mgmt.*, 896 F.2d 540, 542 (Fed. Cir. 1990) (quoting *Rockwell v. Dep't of Transp.*, 789 F.2d 908, 913 (Fed. Cir. 1986)); *see also* Fed. R. App. P. 10(a). Moreover, even if we were to consider the additional information Ms. Royal provided, substantial evidence would still support the Board's decision.

CONCLUSION

The scope of our review of Board decisions is quite narrow. In this case, the Board's determination was not arbitrary, capricious, or an abuse of discretion; it was not obtained without procedures required by law; and it is supported by substantial evidence. Accordingly, the Board's decision is affirmed.

No Costs.