**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROGELIO VERA,
          Appellant,

      v.

DEPARTMENT OF THE ARMY,
          Agency.

DOCKET NUMBER
DA-0432-16-0517-I-1

DATE: October 13, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Gary Mellor</u>, Corpus Christi, Texas, for the appellant.

<u>Kenneth M. Muir</u>, Corpus Christi, Texas, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's action demoting him for unacceptable performance, pursuant to 5 U.S.C. chapter 43. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the case to the Dallas Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant formerly held a WG-10 Machinist position with the agency. Initial Appeal File (IAF), Tab 1 at 2.  On February 23, 2016, the agency issued a memorandum notifying the appellant that his performance failed to meet the requirements for the minimally successful performance level for sub-elements 1A and 1B of Responsibility 1, "Technical Competence," and sub-element 3C of Responsibility 3, "Working Relationships and Communications" for the most recent performance period.[2]  IAF, Tab 5 at 21-22, 52-55.  Effective that day, the agency placed the appellant on a 60-day performance improvement plan (PIP). *Id.* at 17, 54, 56-59.  The memorandum informed the appellant that if he continued to fail to meet the requirements at the minimally successful level in the above critical elements at the end of the PIP, his supervisor would have "no alternative but to recommend that action be taken to initiate [the appellant's] reassignment, demotion, or removal from Federal service." *Id.* at 54.  Following completion of the PIP, the agency demoted the appellant to the WG-9 Machine Tool Operator position, effective August 7, 2016, based on his failure to improve his performance to a minimally acceptable level during the PIP period.  *Id.* at 14-16.

---

[2] The appellant's Fiscal Year 2015 performance standards identify each of the sub-elements of the four Responsibilities as "critical elements."  IAF, Tab 5 at 21-22. The proposal letter, the memorandum placing the appellant on the PIP, and the PIP itself all identify each Responsibility as a "critical element" with corresponding sub-elements.  *Id.* at 17-18, 52-57.  The administrative judge identified each sub-element of the Responsibilities as "critical elements."  IAF, Tab 23, Initial Decision (ID) at 2.  For the sake of convenience, we have referred to each lettered component of each Responsibility as a "critical element" throughout this decision.  Regardless of the terminology used, the PIP specifically informed the appellant that his performance would be less than minimally successful and he would fail the PIP if he did not meet the requirements of Responsibilities 1A, 1B, and 3C during the PIP period.  IAF, Tab 5 at 56-57.

¶3    The appellant timely appealed his demotion to the Board. IAF, Tab 1. After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that the agency proved by substantial evidence that the appellant's performance remained deficient in Responsibility 3C during the PIP period. IAF, Tab 23, Initial Decision (ID) at 1-10. The administrative judge did not address Responsibilities 1A and 1B. ID at 10 n.6. Additionally, the administrative judge found that the appellant had not shown that the agency committed harmful procedural error in reaching its decision to demote him. ID at 10-11.

¶4    The appellant timely filed a petition for review challenging the administrative judge's decision. Petition for Review (PFR) File, Tab 1. The agency filed a response in opposition to the petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5    In a performance-based action under chapter 43, an agency must establish each of the following by substantial evidence[3]: (1) the Office of Personnel Management (OPM) approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to

---

[3] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p). Our reviewing court has described substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008) (quoting *Bradley v. Veterans Administration*, 900 F.2d 233, 234 (Fed. Cir. 1990)); *see Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶ 7 (2011). Additionally, it "must do more than create a suspicion of the fact to be established. . . ." *Bradley*, 900 F.2d at 234 (quoting *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)); *see Adamsen*, 116 M.S.P.R. 331, ¶ 7.

improve; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013)[4]; *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).

¶6      On review, the appellant challenges the administrative judge's findings that the agency cured its invalid performance standards, that it warned him of his inadequacies during the appraisal period and give him a reasonable opportunity to improve his performance, and that his performance remained unacceptable in at least one critical element during the PIP period. PFR File, Tab 1 at 5-12. The appellant also asserts that the agency committed harmful error in executing the PIP by failing to quantify his individual defect rate during the PIP and by failing to grant his request for a second PIP. *Id.* at 5-6, 12.

The agency cured its invalid performance standards by communicating sufficient information about the appellant's performance requirements at the beginning and throughout the PIP period.

¶7      In his petition for review, the appellant argues that the administrative judge erred in finding that the agency cured its invalid performance standards during the PIP. *Id.* at 5, 12. The administrative judge concluded that the appellant's performance standards were invalid because they required extrapolation more than one level below[5] the "successful" level, and did not meaningfully distinguish

---

[4] Although *White* provides that criterion 3 requires that performance standards be valid under 5 U.S.C. § 4302(b)(1), the National Defense Authorization Act for Fiscal Year 2018 redesignated subsection 4302(b) as subsection 4302(c). Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017).

[5] Although the administrative judge stated that the invalid standards required extrapolation more than one level *above* the "successful" level, it is clear in context that she intended to say that the standards required extrapolation more than one level *below* the "successful" level. ID at 6. Any error in this misstatement was inadvertent and harmless, and did not affect the outcome of the decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that was

between "needs improvement" and "fails" in a manner that would inform the appellant of what was required of him to perform at the minimally successful level. ID at 6; *see Henderson v. National Aeronautics & Space Administration*, 116 M.S.P.R. 96, ¶ 13 (2011). Although performance standards must set forth the minimum level of performance necessary to avoid a performance-based action in order to be valid, an agency may cure invalid standards by communicating sufficient information regarding performance requirements at the beginning of, or during, a PIP. *Henderson*, 116 M.S.P.R. 96, ¶¶ 16, 18.

¶8        In finding that the agency cured the invalid standards, the administrative judge noted that agency officials communicated to the appellant his performance deficiencies prior to and during the PIP, including during his midpoint evaluation in January 2016, and met with him on six occasions during the PIP period to discuss performance concerns. ID at 6-8; IAF, Tab 5 at 24-25; Tab 6 at 11, 14, 31, 54, 59; Tab 21, Hearing Compact Disc (HCD) (testimony of the appellant's supervisor); *see Henderson*, 116 M.S.P.R. 96, ¶¶ 16, 18. As the administrative judge observed, during the appellant's midpoint evaluation and prior to the PIP, the agency informed him that his performance was "currently needing improvement" because he already had received five deficiency reports up to that point of the appraisal period. IAF, Tab 5 at 61. Additionally, the PIP indicated that the appellant could receive no more than two additional deficiency reports during the PIP period to avoid failing the PIP. *Id.* at 57. Consequently, we find no error with the administrative judge's conclusion that the agency cured its facially defective performance standards by clearly communicating the appellant's performance requirements to him at the beginning of, and during, the PIP period. *See Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 23 (2013).

---

not prejudicial to a party's substantive rights provided no basis for reversing an initial decision).

<u>The agency warned the appellant of the inadequacies of his performance during the appraisal period and provided him with a reasonable opportunity to improve his performance during the PIP.</u>

¶9    The appellant also argues that he was not provided with a reasonable opportunity to improve his performance during the PIP period, suggesting that his work was unduly scrutinized and that favorable evidence of his work quality during the PIP period was "summarily reject[ed]" by his supervisor. PFR File, Tab 1 at 5-7, 10. In determining whether an agency has afforded an employee with a reasonable opportunity to improve his performance during a PIP, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time that is sufficient to give the employee an opportunity to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32.

¶10   As noted above, the appellant's supervisor met with him almost weekly during the PIP period to discuss concerns regarding his performance. IAF, Tab 5 at 24-25. The appellant's supervisor testified that, in addition to the six meetings during the PIP period, he and several other employees assisted the appellant with his work during the PIP period. HCD (testimony of the appellant's supervisor). *See Goodwin v. Department of the Air Force*, 75 M.S.P.R. 204, 208-09 (1997) (finding that the agency afforded the appellant a reasonable opportunity to improve when it gave her a detailed PIP letter and abundant written feedback during the PIP, and her supervisor made herself available to provide assistance but the appellant did not request further assistance). Accordingly, we find that the appellant has not provided a sufficient basis to disturb the administrative judge's finding that he was afforded a reasonable opportunity to improve during the PIP.

<u>The record does not support the administrative judge's finding that the appellant's performance was below minimally successful in Responsibility 3C during the PIP period.</u>

¶11    On review, the appellant argues that the agency erred in assessing his performance during the PIP period by improperly relying on his receipt of 5230Rs (or "write-ups") as indicating unacceptable performance, and asserts that the administrative judge erred by relying on this mischaracterization. PFR File, Tab 1 at 5-6, 11-12; ID at 9-10.

¶12    As noted above, the appellant's performance standards have four Responsibilities with three sub-elements each. IAF, Tab 5 at 21-22. The memorandum placing the appellant on the PIP indicated that his performance was below minimally acceptable in three of those Responsibilities: 1A, 1B, and 3C. *Id.* at 17, 56-57. Because, as mentioned previously, the administrative judge made no findings regarding whether the appellant's performance was unsatisfactory in Responsibilities 1A and 1B during the PIP period, we will focus on Responsibility 3C.

¶13    Responsibility 3C, "Working Relationships and Communications," required that the appellant "complete travelers correctly." *Id.* at 22, 57; HCD (testimony of the proposing official). Specifically, this Responsibility required that the appellant receive no more than two "quality defects issued for traveler errors" during the PIP period. *Id.* at 57. Travelers are routing documents that travel with the parts as they move between the different machining shops, and are used to record measurements and to explain and document the work done on the parts. HCD (testimony of the appellant's supervisor); IAF, Tab 5 at 34-36; Tab 6 at 32-34. A "traveler error," as described in the performance standards and in testimony by the appellant's senior rater and the proposing official, includes errors in measuring a part or recording information on traveler documents, failing to stamp a traveler, or incorrectly requesting to "bypass" a stage of the machining

process.  IAF, Tab 5 at 22, 57; HCD (testimony of the proposing official); IAF, Tab 6 at 14, 31, 54, 59.

¶14    As the administrative judge noted, when the agency's quality control department inspects a part and determines that it has a defect or was not repaired to required specifications, a 5230R, or a "write-up" is issued identifying the error or defect.  ID at 9; HCD (testimony of the appellant's supervisor).  However, the appellant's supervisor also testified, and the record reflects that, "write-ups" can be issued for a number of *different types* of errors, including for traveler errors, for machining errors, and even for "point of discovery" defects, which apparently relate to preexisting defects in the part discovered by an employee.  IAF, Tab 5 at 5-6; Tab 18 at 6; HCD (testimony of the appellant's supervisor); HCD (testimony of the proposing official).

¶15    In concluding that the agency met its burden of proof concerning Responsibility 3C, the administrative judge cited the appellant's supervisor's testimony stating that "Critical Element C of Responsibility 3 relates to write-ups" and the fact that the appellant received five "5230Rs [write-ups]" during the PIP period.  ID at 9-10; HCD (testimony of the appellant's supervisor).  Yet, during the hearing, the proposing official also testified that in contrast to Responsibility 1A, which dealt with the overall defect rate "regardless of what defect [was] produced," Responsibility 3C dealt "specifically with travelers being incorrect."  HCD (testimony of the proposing official).  Continuing, the proposing official explained that he would "have to look at the specific defect[s]" to see whether any of the write-ups issued during the rating period were "because something wasn't done correctly" on a traveler, and noted that he only could only remember one defect received by the appellant during the PIP that "dealt with a traveler dimension." *Id.*  There was no elaboration offered on the number of quality defects issued to the appellant for traveler errors during the PIP period by any of the agency's witnesses.  Thus, the agency failed to elicit testimony

supporting a finding that the appellant had more than one traveler error during the PIP period.

¶16    Reviewing the agency's documentary evidence similarly is not helpful in discerning which of the errors that the appellant committed during the PIP period were specifically "traveler errors." The submitted documents clearly differentiate the types of errors the appellant made prior to the PIP, and relate each error to a specific job Responsibility, but a similar amount of detail was not provided regarding the errors attributed to the appellant during the PIP period. *Compare* IAF, Tab 6 at 11, 14, 31, 54, 59, *with* IAF, Tab 5 at 17-20. Comparing the descriptions on the write-ups included in the record from the pre-PIP period for known traveler errors, against the provided write-ups from the PIP period similarly is not elucidating. *Compare* IAF, Tab 6 at 15, 18, 21, 24, 27, *with* IAF, Tab 5 at 30, 39, 41, 49, 51. Consequently, we find that the agency has failed to submit sufficient evidence demonstrating that the appellant received two "quality defects issued for traveler errors" during the PIP period,[6] and thus cannot meet its burden of proving by substantial evidence that the appellant's performance was below minimally successful in Responsibility 3C during the PIP period. Accordingly, we vacate the administrative judge's finding that the agency proved by substantial evidence that the appellant's performance remained unacceptable in Responsibility 3C at the end of the PIP period.

---

[6] The PIP language itself is confusing and inconsistent in describing the maximum number of errors the appellant could commit and still avoid failure of the PIP, stating in sequential sentences that (1) "any two deficiencies" would result in PIP failure; (2) that he could receive "no more than two deficiency reports"; and (3) that "any two combinations" among the different deficiency types would result in an unsatisfactory rating. IAF, Tab 5 at 57. The administrative judge interpreted this language to mean that if the appellant committed "more than 2" errors during the PIP, his performance would be considered unsatisfactory. ID at 7-8. Because we ultimately disagree with the administrative judge's findings regarding Responsibility 3C and conclude that the agency failed to provide sufficient evidence that the appellant committed even two quality defects for traveler errors during the PIP period, we need not resolve this inconsistency at this stage of the proceedings.

**This appeal must be remanded for the administrative judge to make findings regarding Responsibilities 1A and 1B.**

¶17    As noted above, the administrative judge did not make any findings regarding Responsibilities 1A and 1B.  ID at 10 n.6.  In light of our determination that the record does not support the administrative judge's conclusion that the appellant's performance was below minimally successful in Responsibility 3C during the PIP period, and due to the fact that a full hearing was held below and consequently, the administrative judge would be in the best position to address these issues in the first instance, we remand this appeal for the administrative judge to make the necessary findings concerning Responsibilities 1A and 1B.

**On remand, the administrative judge must also permit the parties to provide evidence and argument concerning whether the appellant's placement on the PIP was proper.**

¶18    During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021), that part of the agency's burden under 5 U.S.C. chapter 43 is to justify the institution of the PIP by proving by substantial evidence that the employee's performance was unacceptable prior to that time.  Following the issuance of *Santos*, the Board issued an Opinion and Order in *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15, which incorporated the changes made by *Santos* and set forth the agency's burden of proof, concluding that in order to defend an action under chapter 43 the agency must prove the following by substantial evidence:  (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to

demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element.

¶19    The Federal Circuit's decision in *Santos* applies to all pending cases, including the instant appeal, regardless of when the events took place. *Lee*, 2022 MSPB 11, ¶ 16.  Although the record in this appeal contains some evidence indicating that the appellant's performance leading up to the PIP was unacceptable, *see* IAF, Tab 6 at 11, 14, 31, 54, 59, the parties must be provided with the opportunity to present argument and additional evidence on the issue, *see Lee*, 2022 MSPB 11, ¶¶ 15-17.  On remand, the administrative judge shall accept argument and evidence on this issue and shall then issue a new initial decision consistent with *Santos*.  *See id.*, ¶ 17.  If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate her prior findings on the other elements of the agency's case and on the appellant's harmful procedural error affirmative defense claim in the remand initial decision. *See id.*; ID at 10-11.

## ORDER

¶20    For the reasons discussed above, we remand this case to the Dallas Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                                   /s/ for
                                      Jennifer Everling
                                      Acting Clerk of the Board
Washington, D.C.